No. 23-35561

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

BALMUCCINO, LLC, a California limited liability company,

*Plaintiff-Appellant*,
*v.*

STARBUCKS CORPORATION, a Washington corporation;
and DOES 1 through 100, inclusive,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Washington
No. 2:22-cv-01501-JHC
Hon. John H. Chun

_____

APPELLANT'S OPENING BRIEF

_____

Eduardo Martorell, Esq
State Bar No. 240027
EMartorell@Martorell-Law.com
JoAnn Victor, Esq.
State Bar No. 121891
JVictor@Martorell-Law.com
Martorell Law APC
6100 Center Dr. Suite 1130
Los Angeles, CA 90045
Telephone: (323) 840-1200;
Facsimile: (323) 840-1300
*Attorneys for Plaintiff-Appellant*
BALUCCINO, LLC

# DISCLOSURE STATEMENT

Appellant Balmuccino, LLC has no parent corporation and there is no publicly held corporation that owns 10% or more of its stock. Fed. R. App. P. 26.1(a).

Date: November 27, 2023

**Martorell Law APC**

s/ Eduardo Martorell
Eduardo Martorell
JoAnn Victor
*Attorneys for Appellant Balmuccino, LLC*

i

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................1

II. JURISDICTIONAL STATEMENT ......................................................4

III. ISSUE(S) PRESENTED ........................................................................5

IV. STATEMENT OF THE CASE .............................................................6

    A.     Background Facts as Delineated in Appellant's First Amended Complaint .............................................................................................6

    B.     Procedural History as Delineated in Appellant's First Amended Complaint .............................................................................................9

    C.     The District Court's Grounds for Dismissal of Appellant's FAC ......13

         1.     The District Court Assumed a Conflict of Law between California and Washington State ...............................................13

V. SUMMARY OF THE ARGUMENT ..................................................19

VI. STANDARD OF REVIEW ..................................................................20

VII. ARGUMENT........................................................................................22

    A.     The District Court Erred in Finding that a Conflict of Law Analysis Based on the "Most Significant Relationship" Test Favors Washington, Rather than California.....................................................22

         1.     As to Balmuccino's Contract Claims, a Conflict of Law Analysis Is Inconclusive and Should Not be Resolved on a 12(b)(6) Motion........................................................................23

         2.     As to Balmuccino's Tort Claims, a Conflict of Law Analysis is Inconclusive and Should Not be Resolved on a 12(b)(6) Motion ...............................................................................26

    B.     In that the Substantial Relationships Test Favors California, California's Equitable Tolling Principles Apply and Render Balmuccino's Lawsuit Timely .............................................................34

ii

1. Balmuccino Expeditiously Moved the Litigation through State Court before Filing in Federal Court ........................................34

2. California and Washington Law Differ on the Elements of Equitable Tolling; California's Equitable Tolling Principles Should Apply ...........................................................................36

    a. Elements of Equitable Tolling in California .................36

    b. In California, Equitable Tolling is Not Precluded by a Plaintiff's Having Filed in the Wrong Forum ...............38

    c. Equitable Tolling is Meant to Discourage the Filing of Multiple Lawsuits in Multiple Forums as a Form of Insurance, and which Needlessly Strains and Overburdens the Court Systems and Which Goal is Recognized both in California and Washington.............41

C. Balmuccino Should Be Permitted to Pursue its First Amended Complaint Given the Liberal Policy Towards Amendments, or Alternatively, be Permitted to File a Further Amended Complaint....44

VIII. CONCLUSION...............................................................................49

# TABLE OF AUTHORITIES

Page(s)

Cases

*Addison v. State of California*,
  21 Cal. 3d 313 (1978)........................................................................... 12, 36, 39, 41

*Am. Mobile Homes of Wash.*,
  115 Wash. 2d 307 (1990) .............................................................................. 42

*Appalachian Ins. Co. v. McDonnell Douglas Corp.*,
  214 Cal. App.3d 1, 262 Cal. Rptr. 716 (1989)....................................... 36, 39, 49

*Balmuccino, LLC v. Starbucks Corporation*,
  2022 WL 3643062 (Cal. App. 2d. Aug. 24, 2022) ................................ 16, 32, 47

*Balmuccino, LLC v. Starbucks Corporation*,
  2023 WL 4761447 (W.D. Wash. July 26, 2023) ................................................ 13

*Bryant v. Wyeth*,
  879 F. Supp. 2d 1214 (W.D. Wash. 2012).................................................... 16, 26

*Bunch v. Nationwide Mut. Ins. Co.*,
  180 Wash. App. 37, 321 P.3d 266 (2014)...................................................... 41, 42

*Burnett v. New York R.R. Co.*,
  38 U.S. 424 (1965) ............................................................................................ 40

*Butler v. Nat'l Cmty. Renaissance of Cal.*,
  766 F.3d 1191 (9th Cir. 2014)........................................................................... 14

*Cervantes v. City of San Diego*,
  5 F.3d 1273 (9th Cir. 1993).................................................................. 1, 2, 44, 47

*Chaidez v. Alameda County*,
  2023 WL 6466385 (N.D. Cal. Oct. 3, 2023)...................................................... 40

*Conley v. Gibson*,
  355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).................................................. 45

iv

*Credit Suisse First Bos. Corp. v. Grunwald*,
400 F.3d 1119 (9th Cir. 2005).................................................................. 32

*Edwards v. Marin Park, Inc.*,
356 F.3d 1058 (9th Cir. 2004).................................................................. 20

*Elkins v. Derby*,
12 Cal. 3d 410, 525 P.2d 81 (Cal. 1974).................................. 36, 41, 49

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003).................................................................. 44

*Erwin v. Cotter Health Ctrs.*,
161 Wash. 2d 676, 167 P.3d 1112 (2007)............................................... 14

*Flores v. City of Westminster*,
873 F.3d 739 (9th Cir. 2017).................................................................... 20

*Fowler v. Guerin*,
200 Wash. 2d 110 (2022) .................................................................... 2, 13

*FutureSelect Portfolio Mgt, Inc. v. Tremont Grp Holings, Inc.*,
180 Wash. 2d 954, 331 P.3d 29 (2014)................................................... 25

*Hartmann v. Cal. Dep't of Corr. And Rehab.*,
707 F.3d 1114 (9th Cir. 2013.)................................................................ 20

*Hatfield v. Halifax PLC*,
564 F.3d 1177 (9th Cir. 2009).................................................................. 39

*Hensley v. Unite States*,
531 F.3d 1052 (9th Cir. 2008).................................................................. 21

*HIBU Inc. v. Plotkin Fin., Inc.*,
722 F. App'x 625 (9th Cir. 2018) ..................................................... 38, 39

*Huynh v. Chase Manhattan Bank*,
465 F.3d 992 (9th Cir. 2006).................................................................... 20

*Jablon v. Dean Witter & Co.*,
    614 F.2d 677 (9th Cir. 1980)............................................................. 44, 45

*Jorgensen v. Cassiday*,
    320 F.3d 906 (9th Cir. 2003)................................................................. 20

*Kaspers v. Howmedica Osteonics Corp.*,
    2015 WL 12085853 (W.D. Wash. Oct. 23, 2015) ............................... 25

*Kelley v. Microsoft Corp.*,
    251 F.R.D. 544 (W.D. Wash. 2008) ........................................ 26, 48, 49

*Klamath-Lake Pharm. v. Klamath Med. Serv. Bureau*,
    701 F.2d 1276 (9th Cir.)........................................................................ 44

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) .............................................................................. 14

*Landmark Screens, LLC c. Morgan, Lewis & Bockus, LLP*,
    676 F.3d 1354 (Fed. Cir. 2012).............................................................. 39

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
    416 F.3d 940 (9th Cir. 2005).................................................................. 20

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000)................................................................ 21

*Mayes v. Leipziger*,
    729 F.2d 605 (9th Cir. 1984).................................................................. 37

*McDonald v. Antelope Valley Community College Dist*,
    45 Cal.4th 88, 194 P.3d 1026 (Cal. 2008) .......................... 36, 38, 40, 49

*Millay v. Cam*,
    135 Wash. 2d 193 (1998) ...................................................................... 13

*Nicholas v. Canoga Indus.*,
    83 Cal. App. 3d 956 .............................................................................. 39

*Oja v. U.S. Army Corps. of Engineers*,
   440 F.3d 1122 (9th Cir. 2006) ................................................................ 20

*Patton v. Cox*,
   276 F.3d 493 (9th Cir. 2002) .................................................................. 14

*Polich v. Burlington N., Inc.*,
   942 F.2d 1467 (9th Cir. 1991) ................................................................ 21

*PTP OneClick, LLC v. Avalara, Inc.*,
   413 F. Supp. 3d 1050 (W.D. Wash. 2019) ............................................. 25

*Retail Clerks Union Local 648, AFL–CIO v. Hub Pharmacy, Inc.*,
   707 F.2d 1030 (9th Cir. 1983) ................................................................ 36

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) .................................................................. 32

*Shanghai Com. Bank Ltd. v. Chang*,
   189 Wash. 2d 474, 404 P.3d 62 (2017) .................................................. 14

*Sherwin v. Arveson*,
   96 Wash. 2d 77, 633 P.2d 1335 (1981) .................................................. 42

*Socop-Gonzalez v. I.N.S.*,
   272 F.3d 1176 (9th Cir. 2001) ................................................................ 21

*Supermail Cargo, Inc. v. United States*,
   68 F.3d 1204 (9th Cir. 1995) .................................................................. 45

*Tilden–Coil Constructors, Inc. v. Landmark Am. Ins. Co.*,
   721 F. Supp. 2d 1007 (W.D. Wash. 2010) ............................................. 14

*West Corp. v. Superior Court*,
   116 Cal.App.4th 1167 (2004) ................................................................. 29

*White v. Symetra Assigned Benefits Serv. Co.*,
   2022 WL 2983943 (W.D. Wash. Aug. 3, 2022) .......................... 16, 26, 33

Statutes

18 U.S.C. § 1836 ................................................................................. 10

28 U.S.C. § 1291 ................................................................................... 4

28 U.S.C. § 1332(d)(2) .......................................................................... 4

Civ. Code, §§ 3426-3426.11 ............................................................... 10

RCW 19.108 ........................................................................................ 10

Rules

Cal. R. Ct. 8.115 ................................................................................. 32

Fed. R. App. P. 4(a)(a)(A) .................................................................... 5

Fed. R. App. P. 26.1(a) ......................................................................... 1

Fed. R. App. P. 28-2.6 ........................................................................ 51

Fed. R. App. P. 29(a)(5) ....................................................................... 1

Fed. R. App. P. 32(a)(5) and (6) .......................................................... 1

Fed. R. App. P. 32(f) ............................................................................ 1

Fed. R. Evid. 201(b)(2) ....................................................................... 32

Fed. R. Civ. P. 12(b)(6) ................................................................. 10, 20

Ninth Circuit Rule 25-5 ........................................................................ 2

# I.    INTRODUCTION

The instant appeal derives from the district court's summary disposition of the lawsuit of Appellant Balmuccino, LLC ("Appellant" or "Balmuccino") on Rule 12(b)(6)[1] Motion to Dismiss brought by Starbucks Corporation ("Motion") as relates to three intertwined issues.  The first is whether the court incorrectly ruled that a conflict of law between California where Balmuccino is domiciled and operates, and Washington, where Appellee Starbucks Corporation ("Appellee" or "Starbucks") is headquartered, favored the state of Washington.  Balmuccino maintains the district court erroneously found in Starbucks's favor on this issue.  In turn, the court's decision unjustly crippled the ability of Balmuccino to use equitable tolling principles that would clearly have allowed it to litigate in federal court after the California courts dismissed the matter over the issue of personal jurisdiction.

In this regard, California law provides that "[a]t a minimum, determining the applicability of equitable tolling necessitates resort to the *specific* circumstance of the prior claim."[2]  This includes the "parties involved," the "issues raised," any

---

[1]Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted.  As discussed below, in this regard, the complaint must be liberally construed in plaintiff's favor and all facts plead in the complaint taken as true.

[2]*Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993).

1

"evidence considered" and "discovery conducted."[3]  As such, this ordinarily "requires reference to matters outside the pleadings," and therefore is not "generally amenable to resolution on a Rule 12(b)(6) motion, where review is limited to the complaint alone."[4]  Unlike California, however, equitable tolling is unavailable in Washington absent a claim of bad faith, deception or false assurances.[5]

As developed more thoroughly below, the district court ruled that there was a conflict of law between California and Washington law, but that Starbucks should prevail because there was no showing of bad faith in Balmuccino's proposed First Amended Complaint and that the allegedly more substantial operations of Starbucks in Washington outweighed the presence of Balmuccino in California, its development of its product in California, the many material communications occurring there, and the harm caused Balmuccino in California. At this juncture in the lawsuit, Balmuccino had had no opportunity to conduct discovery.  Instead, the district court summarily dismissed the litigation even though Appellant had diligently pursued the case through California's state courts,

---

[3] *Id*.

[4] *Id*.

[5] *Fowler v. Guerin*, 200 Wash. 2d 110, 119 (2022).

which ruled that personal jurisdiction was lacking over the litigation. Once the California state court of appeal confirmed this lack of jurisdiction, and before the appellate court even issued its remittitur, Balmuccino refiled its suit with the district court of the Western District of Washington.

This choice of law issue is of extreme importance to Balmuccino as it has not had its day in court despite strong evidence of trade secret theft by Starbucks. This is based on the California courts finding it had no personal jurisdiction to bring the case despite Balmuccino being domiciled in California. It is only fair, as the equity policies underlying equitable tolling dictate, that Balmuccino's case now be heard in Washington after California declined jurisdiction. This is especially the case where the Washington case was filed before the California appellate court even issued its remittitur – meaning there has been no time since 2019 that Balmuccino has not had an active case against Starbucks on its trade secret misappropriation claim. Thus, affirming the Washington district court's ruling would result in a manifest injustice, with two courts having declined to hear its case despite having timely filed the California action and consistently prosecuting it.

The timing of Balmuccino's seriatim filings in state and federal court reflected an emphasis in California courts on preserving judicial resources—a goal that cannot be accomplished when the same action is pursued at the same time in

3

different venues. Thereafter, however, the district court concluded that any

conflict of law on Balmuccino's claims favored Starbucks. This was dispositive of

the case as a whole because Washington law did not support equitable tolling. On

this appeal, Balmuccino argues that the district court erred in concluding that the

conflict of law issue weighed more favorably for Appellee than for Appellant. If,

in fact, the conflict involving equitable tolling had been resolved in Balmuccino's

favor, the instant lawsuit should have gone forward, so as to give Balmuccino its

day in court. Instead, it was denied an opportunity to be heard on the merits,

despite the Ninth Circuit's caution that amendments to complaints are to be

liberally granted. As discussed below, Balmuccino was denied justice and due

process simply because it elected to sue in the state where it was harmed before

seeking further recourse through the federal courts. The Ninth Circuit should not

allow this injustice to stand.

## II.    JURISDICTIONAL STATEMENT

Balmuccino sued Starbucks in the U.S. District Court for the Western

District of Washington pursuant to 28 U.S.C. § 1332(d)(2) because the amount in

controversy exceeds $75,000, exclusive of interest and costs, and the Plaintiff and

all its members are citizens of a State (California) different from Defendant

(Washington). Pursuant to 28 U.S.C. § 1291, the court of appeals (other than that

for the federal circuit) "shall have jurisdiction of appeals from all final decisions of

the district courts of the United States." The date of entry of judgment dismissing the First Amended Complaint with prejudice and disposing of all parties and claims was July 26, 2023. ER-79. The date of filing of the appeal to the Ninth Circuit was August 24, 2023. ER-229. The appeal was filed within thirty days of the date of entry of judgment and is therefore timely. FRAP 4(a)(a)(A).

### III.   ISSUE(S) PRESENTED

(1)   Whether the district court erred in finding that any conflict of law favored the state of Washington, rather than California, on Balmuccino's contract and tort claims when it is unknown where Starbucks developed its Balmuccino-based protypes and where the lawsuit here was not one where the place of injury was fortuitous.

(2)   If any conflict of law favored California, whether California's equitable tolling principles favor Balmuccino.

(3)   If the district court should have applied California's equitable tolling principles, whether Balmuccino should be permitted to pursue its First Amended Complaint given the liberal policy towards amendments, or alternatively, be permitted to file a further amended complaint.

## IV.    STATEMENT OF THE CASE

## A.    <u>Background Facts as Delineated in Appellant's First Amended Complaint</u>

Appellant's proposed First Amended Complaint (alternatively, "FAC") frames the instant appeal, as well as Appellant's original suit against Appellee Starbucks in state court.  The FAC advances the following facts and argument, which were integrated into the federal district court's Order Granting Appellee's/Defendants Motion to Dismiss the First Amended Complaint ("Order"): Appellant Balmuccino was a California limited liability company doing business in Los Angeles, California.  ER-162.  Appellee Starbucks was a Washington Corporation doing business globally, but at the time of the instant lawsuit had nearly ten percent of its retail stores in California, where the Balmuccino team resided and where its business operated.  ER-165.

Beginning in 2016, Plaintiff's managing members developed a line of coffee-flavored lip balms in California and wished to jointly manufacture and sell their products through a joint venture partnership.  ER-163.  In or about June 2017, a principal of Balmuccino, Samantha Lemole ("Lemole"), informed her brother-in-law, known professionally as Dr. Öz, that Appellant was searching for an entity with which it could manufacture and sell the lip balms.  ER-163.  Dr. Öz then contacted Starbucks's CEO, Howard Schultz, about the potential for a promising

6

joint venture involving the lip-balm concept and product. ER-163. In turn, Mr. Schultz instructed Öz to have Lemole and Appellant's other members contact Starbucks's Head of Product Development and Senior Vice President, Mesh Gelman. ER-163.

Thereafter, on or about October 19, 2017, four of Appellant's representatives, including Appellant's lead chemist and product manufacturer, Vince Spinnato, met Mr. Gelman and his assistant in New York for a pitch meeting ("Meeting"). ER-163. During the Meeting, Appellant presented Mr. Gellman with a pitch deck, along with fully realized prototypes for Appellant's product line, designed specifically for Appellee Starbucks. ER-163. Gellman extensively questioned the Balmuccino team, especially chemist Spinnato about, *inter alia*, Plaintiff's concepts and products, the creation process of the subject lip balms, and different flavor possibilities. ER-164. Mr. Spinnato discussed details of the entire process, including the names and location of the material suppliers and manufacturers that had been involved during the nearly two-year development process. ER-164. During the questioning, Mr. Gelman's assistant took copious notes. ER-164. At the end of the meeting, Mr. Gelman asked if he could hold on to the pitch deck so he could run the idea "up the flagpole" and explore the possibility of a partnership or joint venture moving forward. ER-164.

During the Meeting, Plaintiff requested that Mr. Gelman sign a Non-Disclosure Agreement. ER-163. Gelman deflected, stating that the meeting and the items discussed therein were completely confidential and that the relationship between Mr. Schultz and Dr. Öz, who had brokered the Meeting, should afford the necessary comfort and protections Plaintiff was seeking through a Non-Disclosure Agreement. ER-163-164. Two weeks after the Meeting, Mr. Gelman told team members of Balmuccino that he was leaving Starbucks, but he did not discuss the status of the product pitch. ER-164.

In 2018, Appellant learned that employees of Appellee's Research and Development team had contacted a supplier of Mr. Spinnato's about coffee-flavored lip balms and to request creation of prototypes of branded lip balm and lip balm cases for Starbucks. ER-164. The specifications for those prototypes matched those given Gelman during the Meeting. ER-164.

In or about April 2019, Starbucks announced its launch of 'The S'Mores Frappuccino Sip Kit' (alternatively, "Sip Kit" or "Kit") which contained four liquid lipsticks/glosses and which celebrated Starbucks's return of S'Mores Frappuccino in four shades. ER-164. In turn, that promotion reached California which hosted about a tenth of Starbucks's retail stores. ER-165. Balmuccino maintains Starbucks misappropriated Balmuccino's proprietary information which

was transmitted during the Meeting and that the Kit was produced and promoted to help drive sales, but without compensation to Appellant. ER-165.

## B. **Procedural History as Delineated in Appellant's First Amended Complaint**[6]

The following facts are derived from Appellee's proposed FAC and are largely repeated in the district court's Order thereon. Balmuccino timely filed suit against Starbucks on October 18, 2019, for breach of both oral and implied-in-fact contract, breach of confidence and trade secret misappropriation, in the California Superior Court for the County of Los Angeles, Case Number 19STCV37444. ER-165. Service of Summons and Complaint on Starbucks occurred one week later on October 25. ER-165. The state court judge thereafter ruled it lacked personal jurisdiction over Starbucks and on July 17, 2020, the superior court entered Notice of Entry of Dismissal. ER-165. On September 10, 2020, Balmuccino filed its Notice of Appeal with the state Court of Appeal. ER-166. That court affirmed the lower court's ruling on August 24, 2022. ER-166. A remittitur issued on October 26, 2022, thereby dismissing the Appeal as of that date. ER-166.

---

[6] The procedural facts listed herein are reproduced in the District Court's Order Granting Defendant's Motion to Dismiss the FAC. ER 4-5.

On October 21, five days before the remittitur issued, and the state appeal formally resolved, Appellant refiled its case in Washington federal court. ER-166. Two months later, on January 20, 2023, Starbucks moved to dismiss Balmuccino's federal complaint under Federal Rule of Civil Procedure 12(b)(6). ER-200-219. Rather than oppose Starbuck's Motion to Dismiss, Balmuccino filed a First Amended Complaint on February 13, 2023. ER-190-199. Although that filing was mistakenly filed one day late, the district court permitted Balmuccino to file an amended complaint. ER-188-189. Balmuccino filed an unopposed motion for leave to file a first amended complaint, which motion was granted on March 7, 2023. ER-174; 175-176.

On March 9, 2023, Balmuccino filed its First Amended Complaint and alleged six causes of action against Starbucks: breach of implied-in-fact contract; breach of oral contract; breach of confidence, trade secret misappropriation under California's UTSA (Civ. Code, §§ 3426-3426.11); trade secret misappropriation under Washington UTSA, RCW 19.108; and, trade secret misappropriation under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836. ER-162-173. The FAC also alleged Balmuccino had reasonably and in good faith brought its lawsuit in its home state of California where all four of its members were residents at the time of filing, where substantially all product research and development had occurred, where the vast majority of communications with Starbucks had flowed to and

from, and from whence all of Appellant's principals traveled for the Meeting. ER-165. Additionally, the FAC advanced the position that Balmuccino should have its day in court, rather than having the matter dismissed, or having been expected to file its case simultaneously in California state court and Washington federal court—"a policy that would lead to absurd results involving a multiplicity of actions and a waste of judicial and attorney resources whenever personal jurisdiction is even a remote question." ER-166, ¶ 23.

On March 23, Starbucks filed a Rule 12(b)(6) motion to dismiss Balmuccino's FAC. ER-134-161. On April 10, 2023, Balmuccino opposed the motion to dismiss ("Opposition") ER-118-130; Starbucks replied on April 14, 2023. ER-101-117. On July 26, 2023, the district court issued its order granting Starbuck's Motion to Dismiss ("Order"). The Order is the subject of the instant appeal. ER-79.

In its Opposition to the Motion to Dismiss, Balmuccino argued, *inter alia*, that it had met the "significant relationships" test used to assess a conflict of law claim that sounded either in contract or tort law. As to breach of contract-related claims, Balmuccino delineated the following: (1) Balmuccino was a California company whose business was in that state and where all contacts between the parties occurred before the Meeting; (2) the research and development for the products pitched at the Meeting derived from California; (3) any joint venture with

11

Starbucks would redound to the benefit of Balmuccino's Los Angeles operations; and, (4) that a disproportionately high share of Starbucks's retail operations were California-based, so that Balmuccino could reasonably conclude it would benefit from Starbuck's California operations.  ER-126.

As with its contract causes of action, Balmuccino argued that there were more significant relationships with California than with Washington, as to its tort claims because California was where Balmuccino: (1) had developed its lip balm-related products and engaged in all of its Starbucks communications outside of the Meeting; (2) had centered its business operations; and (3) was first potentially damaged by Starbucks after it misappropriated Balmuccino's research and development and integrated it into the Sip Kit, which was released in California. ER-127.

To maintain its claim against Starbucks in federal district court after the California Court of Appeal ruled against it, Balmuccino analyzed the differences between Washington and California law, noting that California's requisites for equitable tolling were three-fold: timely notice, along with lack of prejudice to the defendant, and a showing that plaintiff had engaged in reasonable and good faith conduct. *Addison v. State of California*, 21 Cal. 3d 313, 319 (1978) ("*Addison*"). In its Opposition to the Motion to Dismiss ("Opposition"), Balmuccino contrasted California's equitable tolling requisites with those of Washington state.  The latter

is more restrictive than California's—permitting such tolling as justice requires only when the following elements exist: defendant's bad faith, deception or false assurances, and plaintiff's exercise of diligence, so long as such tolling is consistent with the purpose of the statute informing an alleged cause of action and with the purpose of the statute of limitations. E.g. *Fowler v. Guerin*, 200 Wash. 2d 110, 119 (2002).[7] Thus, Washington's equitable tolling requisites include an element of the defendant's bad faith that is not required under California state law. Accordingly, and as noted in the Opposition, "since Washington courts require satisfaction of an additional (and sometimes case dispositive) element before equitably tolling a statute of limitations, there may be a conflict of law between California's and Washington's equitable tolling.

## C. The District Court's Grounds for Dismissal of Appellant's FAC[8]

### 1. The District Court Assumed a Conflict of Law between California and Washington State

As a threshold matter, the district court's Order addressed choice of law questions as between California, where Appellant operated, and Washington state,

---

[7]As noted in the Opposition, *Fowler* reiterates the test provided in *Millay v. Cam*, 135 Wash. 2d 193, 206 (1998).

[8]It should be noted that the district court's opinion was posted on West Law (2023 WL 4761447) as a slip copy with a notation that the matter has been appealed.

where Appellee resided. ER-86. In so doing, the district court applied

Washington's "most significant relationships" test to resolve the issues. ER-86.

Here, the court noted that 'when the federal court sits in diversity, it must look to

the forum state's choice of law rules to determine the controlling substantive law.'

ER-85[9] The court then observed that pursuant to Washington State's choice of law

rules, Washington state law would presumptively apply unless, *inter alia*, there

was an actual conflict between the law of Washington and that of another state and

"and the other state bears a more significant relationship to the claims."[10]

ER-85-6.

In so doing, the district court narrowed any conflict of law issue to whether

California and Washington law had an actual conflict in their approach to equitable

tolling.[11] ER-88. Here, the court assumed there was a such a conflict because

---

[9]Citing *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) (citing *Klaxon Co. v. Stentor Elec. Mfg*. Co., 313 U.S. 487, 496 (1941).

[10]Citing to the following cases: *See Tilden–Coil Constructors, Inc. v. Landmark Am. Ins. Co.*, 721 F. Supp. 2d 1007, 1013 (W.D. Wash. 2010) (presumption that Washington law applies); *Shanghai Com. Bank Ltd. v. Chang*, 189 Wash. 2d 474, 484–85, 404 P.3d 62 (2017) (effective choice of law); *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014) (conflict with federal law); *Erwin v. Cotter Health Ctrs.*, 161 Wash. 2d 676, 692, 167 P.3d 1112 (2007) (actual conflict of law).

[11]The district court also noted that Balmuccino's conflict of law claim included its cause of action for breach of confidence, but noted that that cause of action was subsumed by both California's and Washington's Uniform Trade Secrets Act ("UTSA"). Appellant's breach of confidence claim is not the subject of this appeal.

Washington's requisites for such tolling included a 'bad actor' element, which California law did not include. ER-88. For purposes of its analysis, the court then proceeded to the "most significant relationships analysis to determine which state's laws apply" in the context of both Balmuccino's contract and tort-related claims. ER-88.

As to the contract claims, the court first found that the Meeting was of no help in analyzing the place of contracting and the place of negotiating the contract, in that the pitch meeting had not occurred in California or Washington, but rather in New York. ER-89. It then found that the test of "domicile, residence, nationality, place of incorporation and place of business of the parties" was a draw in that Balmuccino had been registered in California and Starbucks was a Washington corporation (despite Starbucks having the highest number of retail stores in California). ER-89. The court then concluded that Washington should prevail because the products at issue were coffee-flavored lip balms sold by Starbucks, and that the "place of performance and the location of the contract's subject matter relate more to Washington." ER-89. The court's position here was that the Starbucks employees who would have performed the contract or been responsible for its breach were in Washington and that Starbucks's 'sizeable retail presence in California' did not affect this because it did not tie the subject matter of

the contract's performance or location to California more than to other states where "Starbucks has significant operations." ER-89-90.

The court also advanced the position of the California Court of Appeal that the alleged trade secret misappropriation did not derive from Starbucks's California contacts. ER-90. Here, the district court borrowed the language of the unpublished state appellate court's observation that the 'evidence before us' is that the Sip Kit products and its 'promotional campaign' was 'created, developed and launched in Washington, not California.' [12] ER-91. In so stating, the district court concluded that it was not "convinced that California bears the more significant relationship to the case" so that the court declined to apply California law to the contract allegations in its conflict of law analysis. ER-92.

As to Balmuccino's tort claims, the district court concluded that while Balmuccino's alleged injury occurred in California, it was the misconduct of Starbucks in Washington that was more important. As discussed below, the cases upon which the district court relied in this regard implicated multi-state damages or were class actions or proposed class actions.[13] ER-91. Nevertheless, the district

---

[12]Specifically, the district court cites to *Balmuccino, LLC v. Starbucks Corporation*, 2022 WL 3643062, which is a non-published case, and which is red flagged and denoted as "unpublished/noncitable" by Westlaw itself. Moreover, Balmuccino disputes this finding, which is unfounded and dubious given that discovery has not yet taken place.

[13]Those cases were *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 552 (W.D. Wash. 2008) ("*Kelley*"); *Bryant v. Wyeth*, 879 F. Supp. 2d 1214, 1221-22 (W.D. Wash.

court concluded that Balmuccino had not convinced it that California bore the more significant relationship to the tort claims than did Starbucks. As such, the district court determined that the entirety of the lawsuit should be resolved under Washington law. ER-91-92.

### 1. Timeliness of Balmuccino's Lawsuit

After concluding that any conflict of law between California and Washington favored the latter state, the district court assessed whether Balmuccino's claims could be found timely under Washington law. Here, the court found that Balmuccino's causes of action each had a three-year statute of limitations, and that suit in federal court exceeded the limitations period if no tolling is considered. ER-92. The court then assessed whether the running of the statute was subject to statutory or equitable tolling under Washington law. [14] ER-93-98.

In so doing, the district court noted that Washington courts sparingly apply equitable tolling and that such tolling requires a defendant to have acted in bad faith or with deception or false assurances. ER-95. The court concluded

---

2012 ("*Bryant*"); and, *White v. Symetra Assigned Benefits Serv. Co.*, No. 20-1866 MJP, 2022 WL 2983943, at *4 (W.D. Wash. Aug. 3, 2022) ("*White*").

[14]In that Balmuccino is only pursuing equitable tolling on appeal, there is no discussion here of whether statutory tolling applied.

Balmuccino had not alleged such bad acts or that it had timely filed suit. ER-95-96.)

In regard to the latter, the district court recognized that while there might be inefficiencies in forcing a plaintiff to file lawsuits concurrently in state and federal court to satisfy the limitations period, Washington's tolling policy was still operative in the lawsuit. ER-97. As such, Balmuccino's earlier state suit against Starbucks had no tolling effect on a subsequently-filed action, even if it was on the same subject matter. ER-97. The district court also observed that after the California superior court ruled it lacked personal jurisdiction over Starbucks, Balmuccino knew "it might need to file elsewhere at least as of June 2020."[15] ER-97-98. Absent the availability of tolling under Washington law, the district court found that the statutory limitations period applied and that Balmuccino had filed its lawsuit in federal court beyond the three-year limitations period. ER-92. Since the district court ruled this was dispositive, it dismissed Balmuccino's First Amended Complaint and declined further leave to amend. ER-99. At its core, that decision flowed from the court's initial finding that any conflict of law favored Washington

_____

[15]As delineated above and discussed further below, Balmuccino not only knew that it might need to file elsewhere, but timely did so to the California Court of Appeal. The district court's Order neglects this point in its analysis of the equitable tolling issue.

over California, and quashed Balmuccino's ability to advance its claims against

Starbucks in Washington district court, absent a reversal of the lower court's ruling

by the Ninth Circuit Court of Appeals.

## V.      SUMMARY OF THE ARGUMENT

A.      The district court erred in holding that Washington law prevailed over

California law, despite the fact the harm at issue occurred in California

where Balmuccino operates and where the research for, and development of,

the products at issue had occurred.  Absent discovery, it is impossible to

determine whether, in fact, California, not Washington, has the better claim

to the significant relationships involved in the development and distribution

of the Sip Kits which landed in California—the state that not only served as

Balmuccino's base of operations, but where Starbucks had an outsized share

of its retail business.

B.      The district court should have concluded that any conflict of law over the

issue of equitable tolling favored California, not Washington.  This is a

dispositive issue, because California, unlike Washington, permits such

tolling, even absent a showing of bad faith, deception or false assurances.

C.      If the applicability of equitable tolling requires an opportunity for

Balmuccino to conduct discovery, the district court should be directed to

permit time for such fact gathering and, as needed, further amendment of the

First Amended Complaint. This is in keeping with the liberal policy of the Ninth Circuit to liberally permit amendments and which eschews ending lawsuits at the pleading stage on a 12(b)(6) motion.

## VI.  STANDARD OF REVIEW

The standard of review for dismissal under Federal Rule of Civil Procedure 12(b)(6) is *de novo*. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc., et al*. 416 F.3d 940, 946 (9th Cir. 2005); *Ed*wards *v. Marin Park, Inc.* 356 F.3d 1058, 1061 (9th Cir. 2004). In conducting such review, a dismissal is affirmed "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. And Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013.) Similarly, a district court's interpretation of state law is reviewed *de novo*. *Flores v. City of Westminster*, 873 F.3d 739, 748 (9th Cir. 2017). More particularly, here, the appeal poses an intertwined issue of the limitations and choice of law questions, which are reviewed *de novo*. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 996 (9th Cir. 2006) ("*Huynh*").[16]

---

[16]As cited in *Huynh*, *supra*, 465 F.3d at 996, both limitations issues and choice of law decisions are reviewed *de novo* (citing *Oja v. U.S. Army Corps. of Engineers*, 440 F.3d 1122, 1127 (9th Cir. 2006)—statute of limitations issues; *Jorgensen v. Cassiday*, 320 F.3d 906, 913 (9th Cir. 2003—choice of law).

Additionally, this Court reviews for abuse of discretion a district court's decision to deny a party's motion for leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Nevertheless, "dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by an amendment." *Polich v. Burlington N., Inc.* 942 F.2d 1467, 1472 (9th Cir. 1991). Finally, where the underlying facts on a claim for equitable tolling are undisputed, the district court's decision whether to toll the statute of limitations is reviewed *de novo*. *Hensley v. Unite States,* 531 F.3d 1052, 1056 (9th Cir. 2008); *Santa Maria v. Pac. Bell*, F.3d 1170, 1175 (9th Cir. 2000).[17] Because the essential facts of Balmuccino's equitable tolling claim are undisputed, the *de novo* standard of review applies.

---

[17]*The Santa Maria case was overruled on other grounds by Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176 (9th Cir. 2001) (en banc).

## VII. ARGUMENT

## A. The District Court Erred in Finding that a Conflict of Law Analysis Based on the "Most Significant Relationship" Test Favors Washington, Rather than California

The thrust of this appeal is whether Washington or California law applies, assuming, as the district court correctly does, that there is an actual conflict between the law of Washington and California on the issue of equitable estoppel. ER-85. However, Balmuccino, not Starbucks, clearly has the stronger argument in that it is California, not Washington, which should prevail in a conflict of law analysis based on the "most significant relationships" test ("Test"). In that the district court erred in this regard, its order of dismissal should be reversed.

More particularly, as the district court noted, only two elements of the Test were relevant to Balmuccino's contract-related claims: "place of performance and location of the subject matter of the contract." ER-89. Similarly, with Balmuccino's tort-related claims, the district court found there were only two elements of the Test that were relevant: "the place where the injury occurred and the place where the conduct causing the injury occurred." ER-91. However, the district court misapprehends the application of these elements.

22

**1.      As to Balmuccino's Contract Claims, a Conflict of Law Analysis**

**Is Inconclusive and Should Not be Resolved on a 12(b)(6) Motion**

First, as to the contract-focused claims, the district court acknowledges that

"[a]ccording to the complaint, the implied-in-fact and oral contracts barred

Starbucks from releasing coffee-favored lip balms without compensating

Balmuccino or obtaining its consent." ER-89. The Order then states that "[a]s a

Washington-based company, Starbuck's Washington employees would have

performed the contract or breached the contract in Washington." ER-89.

However, this ignores an allegation that after having never heard back from

Starbucks after the Meeting in 2018, Balmuccino's team "was shockingly notified

that Defendant had contacted one of its suppliers with a request for prototypes for

Starbucks-branded lip balm and lip balm cases that mirrored the products

discussed during the Meeting. ER-179. While the district court itself recounts

this fact in the Order (ER-82), it neglects to address its significance. More

particularly, if prototypes were requested outside of Washington state,[18] how

could the court possibly conclude that because Starbucks was a Washington-based

---

[18] To date, the location of that supplier has not been disclosed in the documents filed with the court, which means the court has no grounds to assume that the supplier was in Washington state. If the Court of Appeals reverses the Order and Balmuccino is permitted to amend its Complaint, this information can be supplied.

company, its employees "would have performed the contract or breached the contract in Washington."?  ER-89.

Further, as the First Amended Complaint provides, Balmuccino's members "invested large amounts of energy, time and funds into the development of the product and the prototypes.  It is equally clear Starbucks took the "organic entrepreneurship, creativity, hard work, and invention demonstrated by" Balmuccino's California team "to monetarize their creation without due compensation to Plaintiff."  ER-165.  The locus of activity that permitted Starbucks to manufacture the products it sold in its Sip Kit was centered in California, not Washington.  At least a determination of the involvement of Washington state is premature until the case is more fully developed.

Currently, all that can be derived from the First Amended Complaint is that Starbucks extracted information from Balmuccino's team whose lip balm product was conceptualized and created in California, then produced in another unnamed state which Starbucks later tried to monetize in its retail outlets in California – the state with the largest amount of Starbucks retail outlets – all to the detriment of Balmuccino which resided in and operated out of California. The degree of Starbucks's involvement in any of the alleged wrongs from Washington state is

unknown and completely speculative, because discovery has not yet commenced.[19]

To dismiss the case at this point is therefore wildly premature and can only derive

from a speculative connection to the state of Washington, despite a clear

connection to Balmuccino's operations in California.

As case law provides in this regard, "choice-of-law 'is fact-intensive inquiry

that does not lend itself readily to disposition on a [Rule]12(b)(6) motion.'" *PTP*

*OneClick, LLC v. Avalara, Inc.*, 413 F. Supp. 3d 1050, 1068 (W.D. Wash. 2019)

(quoting *Kaspers v. Howmedica Osteonics Corp.*, No. C15-0053JLR, 2015 WL

12085853, at *11 (W.D. Wash. Oct. 23, 2015).  This point has been emphasized by

the Washington Supreme Court itself.  See *FutureSelect Portfolio Mgt, Inc. v.*

*Tremont Grp Holings, Inc.*, 180 Wash. 2d 954, 331 P.3d 29, 36 n.12 (2014).

---

[19]Further, as discussed below, the extent to which Washington state was actually involved in the development and distribution of the Sip Kit products is speculative, because declarations submitted in the California state courts by Starbucks itself show that many of the warehousing and distribution functions for Starbucks were performed <u>outside</u> of Washington state.  Similarly, the Starbucks employee responsible for marketing the Sip Kits only states that he was unaware of any involvement by Balmuccino in researching and designing the products at issue. Only the conduct of discovery will resolve these issues.  As discussed further below, it is therefore premature to end the lawsuit on a 12(b)(6) motion.

### 2. As to Balmuccino's Tort Claims, a Conflict of Law Analysis is Inconclusive and Should Not be Resolved on a 12(b)(6) Motion

In analyzing whether Washington or California tort law applies under the facts of the instant case, the district court observes that while the alleged injury occurred in California, Washington is "where the conduct causing the injury occurred." ER-91. The court then proceeds to conclude that 'the place where the conduct causing the injury occurred" was more significant than where the injury occurred. ER-91. However, the court's conclusion in this regard rests on three distinguishable cases. In particular, the district court lists the following authorities: (1) "*Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 552 (W.D. Wash. 2008) ("*Kelley*") (finding that the place of injury is of less importance than the place where the conduct causing the injury occurred, especially when the defendant's conduct caused harm in multiple states);" (2) "*Bryant v. Wyeth*, 879 F. Supp. 2d 1214, 1221-22 (W.D. Wash. 2012) ("*Bryant*") (finding that in cases of fraud and misrepresentation, the place of injury is often fortuitous and thus of lesser importance than the place where the conduct causing the injury occurred)"; (3) *White v. Symetra Assigned Benefits Serv. Co.*, No. 20-1866 MJP, 2022 WL 2983943, at *4 (W.D. Wash. July 28, 2022) ("*White*") (finding the location where the conduct causing the injury occurred to be more important because plaintiffs' claims focus on defendants' conduct arising out of Washington)." ER-91. From

26

these cases, the district court then concludes that it was not "convinced that California bears the more significant relationship to Balmuccino's tort claims so will resolve the entirety of this matter under Washington law." ER-92.

a.  **The *Kelley* Case upon which the District Court Relied for Its "Substantial Relationship" Analysis of Balmuccino's Tort Claims is Misplaced and Inapt**

The district court's substantial relationship analysis of whether the law of California or Washington has the better claim as to Balmuccino's tort allegations are readily distinguishable and of little analytic significance. They do not advance a finding that Washington state has a greater interest than does California in trying the instant litigation.

To begin, *Kelly* was an action that involved a request for class certification regarding misrepresentations by Microsoft concerning its marketing of a particular operating system. *Kelley*, *supra*, 251 F.R.D. 547-548. There, the district court found that Washington law applied, in part, because contacts with all fifty states existed, so that the place of injury was fortuitous. *Id*., at 553. Moreover, Washington had a "unique and substantial relationship" with the manufacturer **and** the "acts complained of by buyers took place in Washington." Washington was also the domicile of one of the named Plaintiffs. (*Ibid*.) *Kelley* then concludes that

27

when "the place of injury [is] fortuitous," the place where "the allegedly deceptive and unfair acts originated" is given more weight. (*Id*.)

By contrast here, the **only** place of injury that Balmuccino alleges is in California—the home to Balmuccino's research and development and company operations. Further, the court in *Kelley* acknowledges that when 'the primary purpose of the tort rule involved is to deter or punish misconduct [and not merely to compensate the victim for her injuries] . . . the state where the conduct took place may . . . [have the] most significant relationship." Restatement §145 cmt. c.' *Id*. In the instant matter, Balmuccino sought exemplary damages, but the district advised it had not addressed Balmuccino's request for punitive damages. ER-100.[20]

In addition, the same argument espoused above applies here. Balmuccino alleges Starbucks extracted information from Balmuccino's team whose lip balm product was conceptualized and created in California, then produced in another

_____

[20] In this regard, the district court noted that because it was dismissing all of Balmuccino's claims on timeliness grounds, it need not address the punitive damages issue. As discussed below, if the Court of Appeals reverses and remands this case for further consideration by the district court, the issue of punitive damages clearly poses a conflict of law which should be addressed. See *Bryant*, *supra*, 879 F. Supp. 2d at 1221.

unnamed state which Starbucks later tried to monetize in its retail outlets in California. Thus, the degree of Starbucks's involvement in any of the alleged wrongs from Washington state is unknown and completely speculative, because discovery has not yet commenced.

Finally, where the contacts between the parties are evenly balanced, the most significant relationship test then looks to the policies and governmental interests of the concerned states. *Id*. As a matter of policy, the state of California has a " 'legitimate and compelling interest in preserving a business climate free of . . . deceptive practices.' " [Citations.] [Citations.] *West Corp. v. Superior Court* (2004) 116 Cal.App.4th 1167, 1180. More particularly, California has a strong interest in protecting its resident businesses from trade secret thefts." *Id*. (citations omitted). This is especially so when the business entity whose secrets are being misappropriated has none of the resources that a corporate behemoth like Starbucks has—a behemoth that can (and did) run roughshod over a startup company like Balmuccino. In sum, Balmuccino maintains that the significant relationship test favors a finding that California law applies.

        **b.**        **The *Bryant* Case upon which the District Court Relied for Its "Substantial Relationship" Analysis of Balmuccino's Tort Claims is Misplaced or Inapt**

For its conflict of law analysis, the district court next relied on the *Bryant* case to support its findings that the more significant contacts involved Washington state, rather than California. That case was a personal injury matter where a consumer sued drug manufacturers, asserting claims for negligence and breach of express warranty under the Washington Product Liability Act, and fraud. *Bryant, supra,* 879 F. Supp. 2d at 1214. More specifically, Plaintiff suffered breast cancer after ingesting hormone replacement drugs. In this regard, the court found that while plaintiff had suffered injury in Washington, the harm caused by defendant's nationwide marketing could have occurred anywhere, so, as in *Kelley,* the place of injury was fortuitous. (*Id.* at 1222.) As such, the *Bryant* court not unexpectedly concluded that where the injury occurred was of lesser weight than the location where the conduct causing the harm had occurred. (*Id.*)

Here, however, as discussed above in the context of the *Kelley* case, the harm alleged was entirely California centered. It is where the principals of Balmuccino resided and where its business activities occurred. It is where Balmuccino developed, designed, created, and marketed its product. Indeed, before the Meeting, Starbucks's representatives had communicated with Balmuccino's representatives from California and it was California where Balmuccino suffered its alleged damages. Further, as previously discussed, Starbucks sought reproduction of Balmuccino's products from facilities in an

unnamed state, so that the district court lacked basic information from which to conclude that the more significant relationships were in Washington, rather than California. For this reason alone the district court should have permitted Appellant to go forward on its claims against Starbucks in federal court and, as argued below, applied California law on equitable tolling.

Moreover, the two declarations that Starbucks supplied in support of their Motion to Quash in state district court and that were also included in the Joint Appendix in Lieu of Clerk's Transcript for the State Appeal[21] show that further discovery was warranted before the district court drew any conclusions as to where the allegedly misappropriated lip gloss/balm were misappropriated from. Indeed, the Victoria Wu declaration states Starbucks's operations were spread widely across the nation and were not limited to Washington state. ER-25 at ¶ 5. Specifically, her declaration identified Starbucks's roasting, warehousing and distribution as occurring in Nevada, Pennsylvania and Tennessee, as well as Washington state. *Id.* Similarly, the Declaration of Alistair Bates, Group Marketing Manager, simply states that the marketing of the Sip Kit was done in Washington and that he was unaware of "specifications for a coffee flavored lip

---

[21]See Declarations of Victoria Wu and Alistair Bates. ER-24-27.

balm provided to Starbucks." ER-26. [22]  He says nothing about the research or

fabrication of the products in the Kit.

Despite this, the non-published appellate court opinion which was replicated

in WestLaw[23] and relied on by the district court judge is misleading at best.  That

language states, "[t]he uncontroverted evidence before us is that the Sip Kit lip

glosses, as well as the entire promotional campaign, were created, developed, and

launched in Washington, not California."  As discussed above, this is *not* what

Starbucks's declarations state.  The district court clearly was unaware of the full

record in this regard and its conclusions are accordingly "inconclusive" on the

issue of whether Washington state actually had the more substantial relationship

with the items produced in the Sip Kit, the development of which Balmuccino

maintains derived from its own research and development.

---

[22] Balmuccino asks that the Court take judicial notice of the facts in those declarations.  It is incontestable that each of those declarations were supplied as part of the state court record before the trial court and again as part of the appellate record in state court.  *See Fed. R. Evid.* 201(b)(2)*;* and, *see, Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir.) (judicially noticing party's brief in prior proceeding).

[23] *Balmuccino*, 2022 WL 3643062 at *5.  Non-published California state cases are not recognized law in California state courts and cannot be cited to or relied on by its courts.  Cal. R. Ct. 8.115.  Similarly, they are not binding precedent in federal court.  *Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1126 n.8 (9th Cir. 2005).

c.   **The *White* Case upon which the District Court Relied for Its "Substantial Relationship" Analysis of Balmuccino's Tort Claims is Misplaced and Inapt**

*White* was a proposed nationwide class action. *White*, *supra*, No. 20-1866 MJP, 2022 WL 2983943, at *1 (W.D. Wash. July 28, 2022). There, the court found that the injuries of class members existed throughout the country where members of the class resided, but that Washington was where the injury-causing conduct had occurred. *Id*. at *4. That is, there was no particular locus of activity as to the proposed class, so that Washington, by default, was deemed to have the most significant relationship to the claims. That is not so with the case at bar. Here, both the harm and any communications with Balmuccino outside of the Meeting were with Appellant's California-based team. Moreover, it begs the question to assume that all of the product development and source of harm was from Washington's operations, when Balmuccino alleges that Starbucks arranged for the production of prototypes of Balmuccino's products away from where Starbucks does its Washington-based research and development. Accordingly, the *White* case is not dispositive of whether the most significant relationships to the claims at issue are in California or Washington. This is a question that can only be addressed if the lawsuit continues and discovery is permitted to occur.

**B.** **In that the Substantial Relationships Test Favors California, California's Equitable Tolling Principles Apply and Render Balmuccino's Lawsuit Timely**

In that the district court prematurely concluded the substantial relationship test favored Washington over California, it also wrongly concluded that California's equitable tolling principles did not apply. While such principles may not apply under Washington law, they most certainly would have under California law, so that Balmuccino's lawsuit should have been deemed timely in federal court. As discussed below, Balmuccino reasonably moved through California's state court system, before filing in federal court—a decision that saved the federal court, as well as the parties, time and resources.

**1.** **Balmuccino Expeditiously Moved the Litigation through State Court before Filing in Federal Court**

Contrary to the federal court's assumption that Balmuccino sat on its rights, the record shows Balmuccino moved expeditiously through the state court system in California and then filed in federal court after exhausting its state-court appeal. Specifically, Balmuccino first filed suit in California state court on October 18, 2019. This was only six months after Starbucks announced the launch of its Sip Kit promotion which affected California, where about ten percent of Starbucks's retail stores operated and where Balmuccino alleges it was harmed. ER-165. On

34

July 17, 2020, the trial court dismissed the action, ruling that it lacked personal jurisdiction—a decision that was timely appealed to the state Court of Appeal on September 10, 2020. ER-166. The state court affirmed the lower court's decision and issued its remittitur on October 26, 2022. ER-166. Five days before the remittitur issued, Balmuccino had already refiled in federal court in Washington. ER-166.

As Starbucks acknowledged in its 12(b)(6) Motion, "a plaintiff who was unsuccessful at both the trial and appellate levels," as here, can still invoke equitable tolling. ER-146. However, Appellee insists that Washington law conditions such tolling upon a showing of defendant's 'bad faith, deception, or false assurances." ER-146. As discussed below, that bad faith element is not required from California law, which Balmuccino argues should have been applied, so as to render the instant action timely. In turn, the Court of Appeal should reinstate Appellant's lawsuit. This is the correct result in order for the matter to be heard on its merits rather than being dismissing outright based on a procedurally irregular posture.

35

**2.     California and Washington Law Differ on the Elements of Equitable Tolling; California's Equitable Tolling Principles Should Apply**

Equitable tolling is a judicially crafted doctrine to suspend or extend a limitations period so as to assure fundamental fairness and practicality and to 'prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied." *McDonald v. Antelope Valley Community College Dist*, 45 Cal.4th 88, 99, 194 P.3d 1026, 1031 (Cal. 2008)[24] ("*McDonald*"). As the California courts have described it, it reflects the inherent power of the courts to advance procedural rules to effect justice. *Elkins v. Derby,* 12 Cal. 3d 410, 422, n.9, 525 P.2d 81.

**a.     Elements of Equitable Tolling in California**

California equitably tolls its statutes of limitation during the pendency of an earlier case provided there is "timely notice, and lack of prejudice to the defendant, and reasonable and good faith conduct on the part of the plaintiff."[25]  This applies

---

[24]Quoting *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App.3d 1, 38, 262 Cal. Rptr. 716 (1989).

[25] *Retail Clerks Union Local 648, AFL–CIO v. Hub Pharmacy, Inc.,* 707 F.2d 1030, 1033 (9th Cir.1983) (quoting *Addison v. State, supra,* 21 Cal. 3d at 319).

36

to situations where an action is timely begun in one court and then refiled in another.

Illustratively, in *Mayes v. Leipziger*, 729 F.2d 605 (9th Cir. 1984) ("*Mayes*"), a New York resident sued in New York federal court, which dismissed the suit for lack of personal jurisdiction—a decision that the Second Circuit affirmed. *Id*. at 606. After plaintiff sued against the same defendant in the California district court, defendant moved to dismiss, arguing the limitations period had run. *Id.* at 606-607. Although the district court was unpersuaded by an equitable tolling argument, the Ninth Circuit was persuaded and reversed, finding equitable tolling applied and that the district court had abused its discretion by disallowing amendment on equitable tolling grounds where (1) the New York action had been timely filed; (2) defendant could not argue prejudice since the New York suit had not only put defendant on notice of the claims against him, so that defendant could initiate the gathering of evidence, but where, as here, the two actions were "nearly identical;" (3) where plaintiff had demonstrated good faith and reasonable conduct; and, (4) where there was no undue delay in refiling the case. [26]

---

[26]While it is anticipated that Starbucks will argue there was undue delay in the instant case, the fact is that Plaintiff filed in federal court shortly before the state court of appeal issued its remittitur, as delineated above.

As denoted above, a defendant who moves for dismissal cannot meaningfully argue that he was surprised by the contents of a subsequent suit when plaintiff's claims are substantively similar in both the original and the subsequent litigation. That is, filing of the initial suit affords the defendant timely notice that the facts informing plaintiff's allegations should be investigated.[27]  Here, Starbucks was fully aware of Balmuccino's intent to litigate and the facts that triggered the litigation.  As further discussed below, there is no compelling argument of prejudice under such circumstances, so long, as here, the plaintiff has acted in good faith.

**b.** **In California, Equitable Tolling is Not Precluded by a Plaintiff's Having Filed in the Wrong Forum**

The Ninth Circuit recognizes that equitable tolling typically applies '[when an injured person has several legal remedies, and reasonably and in good faith pursues one.'  *HIBU Inc. v. Plotkin Fin., Inc.*, 722 F. App'x 625, 627 (9th Cir. 2018) ("*HIBU*"), citing *McDonald*, *supra*, 45 Cal.4th at 100.  More particularly, "the doctrine has been . . . liberally construed to apply . . . where the plaintiff

---

[27] As discussed above, Starbucks clearly began to investigate the claims of Balmuccino with the filing of the initial complaint in state court and thereupon filed declarations to quash service on it in California.  In part, those declarations explained that some of its operations occurred in and out of Washington state, and that the marketing of the Sip Kit was from Washington to other states including California, which is the locus of Balmuccino's damages claim.  ER-25, ¶ 5; ER 26-27, ¶ 3.

38

mistakenly files in the wrong forum." *HIBU*, *supra*, 722 F. App'x at 627, citing to

*Hatfield v. Halifax PLC*, 564 F.3d 1177, 1184-86 (9th Cir. 2009) ("tolling

claimant's individual claims based on dismissal of claimant's nearly identical class

action in state court for lack of personal jurisdiction"); and, also, citing to

*Landmark Screens, LLC c. Morgan, Lewis & Bockus, LLP*, 676 F.3d 1354, 1363

(Fed. Cir. 2012) ("tolling limitations period where prior state court suit dismissed

for want of jurisdiction and ambiguity in law as to proper forum").

    As the *HIBU* case further notes, the doctrine of equitable tolling has been

used when a plaintiff in good faith files an action that is later deemed defective, as

in the instant case. This includes situations where an earlier-filed federal suit is

dismissed as time barred.[28] Similarly, it may include a situation where an earlier

filed federal suit is dismissed for lack of jurisdiction.[29] California law also

recognizes equitable tolling when a plaintiff voluntarily dismisses a federal suit,

which "had been improvidently removed from state court," and then subsequently

refiles in state court, such that the action is merely a continuance of the earlier

action. *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, *supra*, 214 Cal. App.

3d at 41-42. Thus, the policy of repose which is "designed to protect defendants, is

---

[28]*Nicholas v. Canoga Indus.*, 83 Cal. App. 3d 956, 960. 963-64 (1978).

[29]*Addison v. State of California*, *supra*, 21 Cal. 3d at 317, 319.

frequently outweighed . . . where the interests of justice require vindication of the plaintiff's rights." *Burnett v. New York R.R. Co.*, 38 U.S. 424, 428 (1965) (extending equitable tolling to a state action dismissed for improper venue, but that was subsequently filed in the proper court after the limitations period had run).

Here, Starbucks certainly had timely notice of the lawsuit, cannot genuinely argue prejudice given its prior filings, including supporting declarations,[30] and where plaintiff has exercised reasonable and good faith conduct. *Chaidez v. Alameda County*, No. 21-CV-04240-RS, 2023 WL 6466385, at *4 (N.D. Cal. Oct. 3, 2023), citing *McDonald*, *supra*, 45 Cal. 4th at 98. Balmuccino has clearly met this test. It timely filed in state court, timely appealed and then removed the case to federal district court even before the remittitur had issued from the state court of appeal.

_____

[30]See footnotes 21 and 22 and 34 and the text to which those footnotes attach.

      **c.**      **<u>Equitable Tolling is Meant to Discourage the Filing of</u>**

           **<u>Multiple Lawsuits in Multiple Forums as a Form of</u>**

           **<u>Insurance, and which Needlessly Strains and Overburdens</u>**

           **<u>the Court Systems and Which Goal is Recognized both in</u>**

           **<u>California and Washington</u>**

As the California Supreme Court has stated, there is no policy that dictates that a plaintiff must simultaneously file "two separate actions based on the same facts in both state and federal courts since 'duplicative proceedings are surely inefficient, awkward and laborious.' *Addison*, *supra*, 21 Cal.3d at 319.[31]  As noted above, in part, this is because a defendant cannot argue prejudice when it has long known the outlines of the claim against it after service of the initial lawsuit and can, as Starbucks clearly did, begin to investigate those claims and preserve whatever evidence it deemed relevant.

This corresponds to Washington state's "priority of action doctrine."  That doctrine provides that the first court to have jurisdiction over a matter retains "exclusive authority to deal with the action until the controversy is resolved," when two actions share "identity" of parties, subject matter and relief.  *Bunch v.*

---

[31]Citing *Elkins v. Derby*, 12 Cal.3d at 420.

*Nationwide Mut. Ins. Co.,* 180 Wash. App. 37, 41, 321 P.3d 266 (2014) ("*Bunch*").

In turn, this works to avoid inconsistent holdings and the needless expenditure of

judicial resources (see, *id*, at 50)—the precise concern expressed by the California

Supreme Court more than three decades earlier. This same point was advanced to

the district court in Balmuccino's Motion for Leave to File First Amended

Complaint. ER-183. There, Balmuccino noted that both in California, where the

instant litigation began, and in Washington state, where it was prematurely ended,

the courts seek to avoid ' " 'unseemly, expensive, and dangerous conflicts of

jurisdiction and of process.' " '[32]

The goals of equitable tolling therefore coincide in California and

Washington. The singular difference between the tolling statutes falls on whether

(as in Washington) a showing of bad faith on defendant's part is a necessary

trigger. As addressed above, Balmuccino maintains that the district court erred in

holding that any conflict of law weighed in favor of Washington, the home state of

Starbucks. Rather, Balmuccino clearly has alleged sufficient facts to show that the

only communication between the parties outside of the Meeting were in California

---

[32]*Bunch*, *supra*, 180 Wash. App. 44, citing *Am. Mobile Homes of Wash.*, 115 Wash. 2d 307, 316-17, 796 (1990) (quoting *Sherwin v. Arveson*, 96 Wash. 2d 77, 80, 633 P.2d 1335 (1981).

where the product at issue was researched and developed and where the harm was sustained. Moreover, Balmuccino properly advanced its case first through the state court system and then filed with the district court even before the state court of appeal issued its remittitur. That is, Balmuccino judiciously saw its case through the state court first, before burdening the federal court with repetitive allegations. As the law provides, duplicative proceedings in different courts are inefficient and a needless waste of resources for both the courts and the litigants.

The district court both acknowledges and rejects this concern for preserving judicial resources. On the one hand, it states as follows: "Balmuccino draws on California's more forgiving tolling law to argue that declining to toll the statutes of limitations during the pendency of the state-court action is bad public policy. Balmuccino may have a point that requiring a plaintiff to concurrently file separate actions in two different jurisdictions is inefficient and laborious." ER-97. After recognizing the conflict in law – which Balmuccino maintains was wrongly decided in favor of Washington's law – the district court states that Balmuccino's policy argument was "weakened by its decision not to file suit elsewhere after the California Superior Court dismissed its claims for lack of personal jurisdiction." ER-97. In essence, the district court eschews California law on this issue, even while recognizing it. If this lack of clarity infused the district court's conflict of

law analysis, it is all the more reason why the order granting Starbucks's Motion to Dismiss should be reversed.

**C.** **Balmuccino Should Be Permitted to Pursue its First Amended Complaint Given the Liberal Policy Towards Amendments, or Alternatively, be Permitted to File a Further Amended Complaint**

As the district court itself recognizes, the policy favoring amending a complaint is to be 'applied with extreme liberality,' citing *Eminence Cap., LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003). ER-98. As such, the Ninth Circuit "strictly" reviews a district court's exercise of discretion denying leave to amend. *Klamath-Lake Pharm. v. Klamath Med. Serv. Bureau,* 701 F.2d 1276, 1292 (9th Cir.), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983).

Further, in that the applicability of equitable tolling implicates matters beyond the pleadings, it is generally not "amenable to resolution on a Rule 12(b)(6) motion.' *Cervantes v, City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993) ("*Cervantes*"). As such, a motion to dismiss based on an argument that the limitations period has run may not be granted unless the complaint, "read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co*., 614 F.2d 677, 682 (9th Cir. 1980) ("*Jablon"*). As even the caselaw upon which the district court relies recognizes, "a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff

can prove no set of facts that would establish the timeliness of the

claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir.

1995).[33]  Accordingly, the Ninth Circuit has "reversed dismissals where the

applicability of the equitable tolling doctrine depended upon factual questions not

clearly resolved in the pleadings." (*Id.*, citations omitted.).

In this regard, the dispositive issue is whether a conflict of law exists on the

tolling issue.  As previously discussed, the district court assumed there was such a

conflict between California and Washington state.  Balmuccino agrees.  However,

Balmuccino maintains that it is California law, not Washington law, which should

have guided the district court's analysis of whether tolling applied.  Specifically,

there is evidence that the lower court erred in finding that there was a more

substantial connection between Starbucks and Washington state than between

Balmuccino and California.

In particular, the Court assumes that the lip balm products at issue were

fabricated in Washington.  At best that is an open question in the absence of

discovery.  What has been alleged is that the prototype of the lip balms was

reproduced through a manufacturer in an unnamed state.  This is significant, in that

---

[33]Citing *Jablon*, supra, 614 F.2d at 682, which cites to *Conley v. Gibson,* 355 U.S.
41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Starbucks itself submitted a declaration in support of its Motion to Quash in California state court, which was also indisputably part of the Joint Appendix on the state appeal, and that concedes that Starbucks manufactures and distributes various products in several states outside of Washington.[34]  Additionally, while the Sip Kit promotion may have issued from Washington, there is no information on where that product was manufactured or assembled for distribution.  What is known is that the Sip Kit reached California where Balmuccino operates and that the Kit's promotion there could only have been targeted to reach the same audience that Balmuccino hoped to reach—an outsized retail market of Starbucks in California.

Further, given that Starbucks has preserved its position in declarations it relied upon in state court, it is incongruous that the district court concludes that Appellee had been prejudiced by the passage of time between the state and federal actions.  Additionally, Starbucks filed a Respondent's brief with the California Court of Appeal on or about November 5, 2021 (ER-30-78), which preserves its arguments and supporting evidence on the issue of where its product development occurred.[35]  Even if these documents were not before the district court on

_____

[34] See second page, ¶ 5 of Victoria Wu Decl., ER-25, ¶ 5.

[35] Illustratively, in its Respondent's Brief, Starbucks insists the its product development and marketing teams were sited in Seattle. ER-64.

Starbucks's 12(b)(6) Motion, the district court itself cites to the unpublished

Balmuccino state appellate court opinion, as reported in WestLaw, and which

specifies that Starbucks had advanced evidence about its corporate executive

decisions, including product development and marketing.[36]  ER-97.  As a result,

there can be no serious argument that substantial evidence has been lost between

the original filing of the case in California state court and its eventual resolution in

Washington district court.  There is no prejudice to Starbucks in this regard.

As the Ninth Circuit has noted, 'similarity' of prior and subsequent claims"

is a significant consideration when assessing any prejudice alleged by defendant.

*Cervantes v. City of San Diego*, 5 F.3d 1273, 1276  (1993).  The issue in this

regard is whether the facts informing subsequent claims are so similar that a

defendant's investigation of an initial claim positioned the defendants to fairly

defend a subsequent claim.  Such duplicative claims were squarely before the

district court here.

What was not before the district court was more specific information with

which Balmuccino could address Starbucks's representation that its lip gloss

products were not a misappropriation of Appellant's research and development.

---

[36]<u>Balmuccino, LLC v. Starbucks Corp.</u>, No. B308344, 2022 WL 3643062, at *1-*2, *5 (Cal. Ct. App. Aug. 24, 2022)

Importantly, this includes information that a prototype of Balmuccino's products was, in fact, first produced <u>outside</u> the state of Washington, as Balmuccino more generally alleged in its proposed First Amended Complaint. This information alone raises the potential for a conflict of law that favors California and its standard for equitable tolling which would preserve the lawsuit in federal district court.

The district court prematurely concluded that the substantial factors at issue in a conflict of law determination favored Washington state. As previously discussed, this is especially so, when as here, Plaintiff is seeking exemplary damages. *Kelley*, *supra*, 251 F.R.D. 5. On appeal, the district court's finding in this regard should be reversed, so as to permit Balmuccino to move forward with its lawsuit in keeping with the liberal policy of permitting amendments to a Complaint.

Additionally, if, as Balmuccino requests, the district court's Order is reversed, the availability of punitive damages need be addressed, to determine if there is a further conflict of law that need be addressed. In this regard, the last substantive paragraph of the Order notes the district court was not addressing this issue because it was dismissing the entirety of the case on timeliness grounds. ER-

48

100.[37]  If the Ninth Circuit agrees that the district court erred in denying

Balmuccino the right to move forward with its lawsuit, the issue of punitive

damages was improperly ignored by the district court.

## VIII.    CONCLUSION

Equitable tolling is a judicially crafted doctrine to suspend or extend a

limitations period so as to assure fundamental fairness and practicality and to

'prevent unjust and technical forfeitures of the right to a trial on the merits when

the purpose of the statute of limitations—timely notice to the defendant of the

plaintiff's claims—has been satisfied." *McDonald, supra*, 45 Cal.4th at 99[38].  As

the California courts have described it, it reflects the inherent power of the courts

to advance procedural rules to effect justice.  *Elkins, supra,* 12 Cal. 3d at 422, n.9.

The equitable doctrine applies squarely to the instant matter, wherein Balmuccino

is in danger of never having its case heard on the merits.  The doctrine exists for

the exact purpose of avoiding injustices such as what Balmuccino is in danger of

facing here.

---

[37]Id., citing the Motion.  ER-140.
[38]Quoting *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App.3d 1, 38, 262 Cal. Rptr. 716 (1989).

For all of the foregoing reasons, Balmuccino respectfully requests that the Ninth Circuit vacate the district court's order of dismissal of Appellant's First Amended Complaint, or, alternatively, that Balmuccino be permitted to file a further amended complaint.

Date: November 27, 2023           Martorell Law APC


                                     s/ Eduardo Martorell
                                EDUARDO MARTORELL
                                JOANN VICTOR
                                *Attorneys for Appellant Balmuccino, LLC*

## STATEMENT OF RELATED CASES (Form 17)

Plaintiff-Appellant is unaware of any related cases pursuant to Federal Rule of Appellate Procedure 28-2.6.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** No. 23-35561_____

I am the attorney or self-represented party.

**This brief contains 10,740 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**   s/ Eduardo Martorell_____   **Date** November 27, 2023_____
*(use "s/[typed name]" to sign electronically filed documents)*

1