No. 23-35561

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

BALMUCCINO, LLC, a California limited liability company,

*Plaintiff-Appellant*,
*v.*

STARBUCKS CORPORATION, a Washington corporation;
and DOES 1 through 100, inclusive,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Washington
No. 2:22-cv-01501-JHC
Hon. John H. Chun

_____

APPELLANT'S REPLY BRIEF

_____

Eduardo Martorell, Esq
State Bar No. 240027
EMartorell@Martorell-Law.com
JoAnn Victor, Esq.
State Bar No. 121891
JVictor@Martorell-Law.com
Martorell Law APC
6100 Center Dr. Suite 1130
Los Angeles, CA 90045
Telephone: (323) 840-1200;
Facsimile: (323) 840-1300
*Attorneys for Plaintiff-Appellant*
BALMUCCINO, LLC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................... 1

II.    ARGUMENT ........................................................................ 3

    A.    The District Court Erred in Concluding that the More Significant Relationships Regarding Balmuccino's Contract and Tort-Related Causes of Action Occurred in Washington, not California .............. 3

        1.    California, not Washington, Had the More Significant Tort-Related Contacts with the Parties for Purposes of Conflict of Law Analysis .......................................................... 4

        2.    California, not Washington, Had the More Significant Contract-Related Contacts for Any Conflict of Law Analysis .................................................................. 9

    B.    Issue Preclusion Does Not Support the District Court's Judgment on Either Substantive or Equitable Grounds ........................................ 14

    C.    Filing a Lawsuit in the Wrong Forum Equitably Tolled the Statute of Limitations under California Law ................................................ 19

    D.    The District Court Abused its Discretion in Dismissing the FAC Based    On the Factual Findings of the California Courts.............. 23

    E.    The District Court Erred in Failing to Permit Discovery on the Issue of Where Starbucks Acquired the Manufacturing Information that Led to Its Development of Sip Kit Products................................... 25

    F.    The District Court Erred in Finding Starbucks was Unduly Prejudiced By any Delay in Filing of Suit in the District Court ..... 26

    G.    The District Court Erred in Not Permitting Balmuccino to Amend Its Complaint................................................................. 28

III.    CONCLUSION ......................................................... 30

# TABLE OF AUTHORITIES

Page(s)

Cases

2022 WL 3643062 ............................................................................. 23

*Addison v. State of California*,
   578 P.2d 941 (Cal. 1978) ............................................... 22, 24

*Bryant v. Wyeth*,
   879 F. Supp. 2d 1214 (W.D. Wash. 2012)............................. 4

*Bryant*,
   444 F.2d ...................................................................... 17, 22

*Canron, Inc. v. Fed. Ins. Co.*,
   918 P.2d 937 (Wash. Ct. App. 1996)............................... 11, 12

*Contreras-Velazquez v. Fam. Health Centers of San Diego, Inc.*,
   276 Cal. Rptr. 3d 358 (Cal. Ct. App. 2021) ....................... 15

*CyWee Grp Ltd. v. HTC Corp.*,
   312 F. Supp. 3d 974 (W.D. Wash. 2018)............................ 28

*Dawson*,
   451 F.3d ...................................................................... 17, 22

*DCD Programs, Ltd.* v. *Leighton*,
   833 F.2d 183 (9th Cir. 1987)............................................ 29

*Direct Shopping* Network, *LLC v. James*,
   143 Cal.Rptr.3d 1 (Cal. Ct. App. 2012) ........................... 15

*Douchette v. Bethel School Dist. No. 403*,
   818 P.2d 1362 (Wash. 1991).......................................... 28

*Elkins v. Derby*,
   525 P.2d 81 (Cal. 1974) ............................................ 20, 21

*Ellis v. Salt River Project Agric. Improvement & Power Dist.*,
    24 F.4th 1262 (9th Cir. 2022) ............................................................... 18

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ............................................................... 29

*Flaa v. Hollywood Foreign Press Ass'n*,
    55 F.4th 680 (9th Cir. 2022) ................................................................. 18

*Hatfield v. Halifax PLC*,
    564 F.3d 1177 (9th Cir. 2009) ............................................................... 19

*HIBU Inc. v. Plotkin Fin., Inc.*,
    722 F. App'x 625 (9th Cir. 2018) .......................................................... 19

*Johnson v. Spider Staging Corp.*,
    555 P.2d 997 (Wash. 1976) .......................................................... 5, 6, 7

*Kelley v. Microsoft Corp.*,
    251 F.R.D. 544 (W.D. Wash. 2008) ......................................................... 4

*Landmark Screens, LLC v. Morgan, Lewis & Brokius, LLP*,
    676 F.3d 1354 (Fed. Cir. 2012) .............................................................. 19

*Malone v. Equitas Reinsurance Ltd.*,
    101 Cal. Rptr.2d 524 (Cal. Ct. App. 2000) ............................................ 16

*Mansfield v. Pfaff*,
    2014 WL 3810581 (W.D. Wash. Aug. 1, 2014) ...................................... 27

*Morongo Band of Mission Indians v. Rose*,
    893 F.2d 1074 (9th Cir. 1990) ......................................................... 27, 28

*Robinson Rancheria*,
    971 F.2d ...................................................................................... 17, 22

*Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*,
    467 P.3d 1033 (Cal. 2020) ...................................................................... 21

*Smith v. ExxonMobil Oil Corp.*,
    64 Cal. Rptr.3d 69 (Cal. Ct. App. 2007) ............................................................... 15

*Spirit of Aloha Temple v. County of Maui*,
    49 F.4th 1180 (9th Cir. 2022) ....................................................... 14

*Teton Glob. Invs. LLC v. LC Inv. 2010, LLC*,
    2022 WL 10385051 (9th Cir. Oct. 18, 2022) ....................................................... 16

*Tilden-Coil Constructors, Inc. v. Landmark Am. Ins. Co.*,
    721 F. Supp. 2d 1007 (W.D. Wash. 2010) ....................................................... 12, 13

*Tukes v. Richard*,
    296 Cal. Rptr. 3d 707 (Cal. Ct. App. 2022) ....................................................... 16

*Union Pac. R.R. Co. v. Santa Fe Pac. Pipelines, Inc.*,
    180 Cal. Rptr. 3d 173 (Cal. Ct. App. 2014) ....................................................... 15, 16

*Waltz v. U.S. Dep't of Agric.*,
    251 F.R.D. 491 (E.D. Cal. 2008) ....................................................... 18

*White v. Symetra Assigned Benefits Serv. Co.*,
    2022 WL 2983943 (W.D. Wash. July 28, 2022) ....................................................... 4

Rules

1 (9th Cir ............................................................................................. 22

Fed. R. App. P. 29(a)(5) ....................................................... 31

Fed. R. App. P. 32(a)(5) and (6) ....................................................... 31

Fed. R. App. P. 32(f) ....................................................... 31

Fed. R. Evid. 201 (d) ....................................................... 17, 22

Federal Rule of Evidence rule 201(b)(c) ....................................................... 22

## I.     INTRODUCTION

The appeal of Balmuccino, LLC ("Balmuccino" or "Appellant") challenges the Order of the District Court of the Western District of Washington (alternatively, "District Court" or "Court") that denied Balmuccino's request for leave to amend its Complaint ("Order").  That order flowed from the Court's misplaced conclusion that any conflict of law on the issue of equitable tolling favored the state of Washington, not California, even though the injury alleged occurred in California after the misappropriation of Balmuccino's lip balm California-developed formulations by Starbucks Corporation ("Starbucks" or "Appellee").

Balmuccino maintains California has the more significant relationship to the actions and allegations in the case and that the District Court erred in not applying California law on the issue of such tolling.  Balmuccino is a California-based entity.  At all relevant times, it was owned by four California residents, its principals.  The product Balmuccino developed was created in, supplies sourced from, designed in, and marketed from California.  Moreover, the product Starbucks distributed that is alleged to contain misappropriated trade secrets was distributed in California more than in any other territory.

Further, even were it assumed the Complaint lacked adequate facts to support a finding that California law should apply, the Court should have permitted

1

discovery with which to better assess whether California or Washington law should have been applied. This is especially so in that it appears the Court improperly relied on the factual conclusions of the California courts to assess whether Washington or California had the more significant relationships with the litigants. This constituted improper application of issue preclusion principals.

Additionally, and contrary to the Court's finding, there is no evidence that the length of the litigation caused Starbucks undue harm or that Balmuccino was responsible for undue delay in advancing the case from the California state courts to the District Court. Indeed, Balmuccino did little more than wait for a ruling on the issue of whether California's state courts had personal jurisdiction over Starbucks and refiled in the Washington Court five days before a remittitur even issued from the California Court of Appeal.

In the meantime, Starbucks had already solicited declarations from its agents which memorialized Starbucks's position on how its lip balm-related products were developed for a promotion that reached to California and its outsized retail market. Neither Starbucks nor the Court can meaningfully contend that Appellee lost information in this regard due to any delay in filing the instant case in federal court.

Finally, equitable tolling was designed for these exact circumstances, wherein a conglomerate with relatively endless resources can focus on procedural

2

defenses prolonging litigation only to then assert the claim paradoxically is time-barred. Starbucks should have to substantively defend against strong claims of corporate misconduct in the form of intentional trade misappropriation. It is only fair that the District Court hear the matter within Starbucks' home state after a California entity was forced to file its lawsuit there after somehow being denied jurisdiction over a global conglomerate in its home state.

In sum, the litigation should be reinstated based on California law, Appellant should be permitted to amend its Complaint and the issues the Court previously tabled should be addressed – including the availability of punitive damages.

## II.     ARGUMENT

A.     <u>The District Court Erred in Concluding that the More Significant Relationships Regarding Balmuccino's Contract and Tort-Related Causes of Action Occurred in Washington, not California</u>

Appellant's many reasons for contending that California has more significant contacts than Washington was covered at length within its Opening Brief.[1] Therefore, those reasons will not be re-stated here at length. However, is it important to recall that the First Amended Complaint provides, Balmuccino's

---

[1] See Appellant's Opening Brief (i.e., "Blue Br."), at pp. 25-26.

members "invested large amounts of energy, time and funds into the development of the product and the prototypes. It is equally clear that [Starbucks took] the organic entrepreneurship, creativity, hard work, and invention demonstrated by" Balmuccino's California team "to monetize their creation without providing due compensation to Plaintiff." ER-165. Thus, the locus of activity that permitted Starbucks to manufacture the products it sold in its Sip Kit was centered in California, not Washington.

Such facts apply to both Balmuccino's tort-related and contract-related claims. The law relating to each claim is analyzed further in turn, in response to Starbucks' arguments within Respondent's Brief.

1. **California, not Washington, Had the More Significant Tort-Related Contacts with the Parties for Purposes of Conflict of Law Analysis**

As to California's tort allegations, Starbucks latches onto the District Court's conclusion that the place of Starbucks's misconduct is more important than the place of injury. Appellee does so with cases that totally ignore those upon which the Court relied for this proposition and which are readily distinguishable.[2]

---

[2] See Blue Br. at pp. 26-33, section 2, distinguishing the cases relied on by the District Court: "*Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 552 (W.D. Wash. 2008) (2) *Bryant v. Wyeth*, 879 F. Supp. 2d 1214, 1221-22 (W.D. Wash. 2012);

4

Instead, Starbucks proposes its own cases as somehow better placed than those of the Court. However, the cases and Restatement upon which Starbucks relies do not diminish the import of the place of injury in establishing which party should prevail on the substantial relationship test.

First, Starbucks relies on *Johnson v. Spider Staging Corp.*, 555 P.2d 997 (Wash. 1976) ("*Johnson*"), to argue that Washington law applied even though plaintiff was from Kansas, the same state where he suffered injury using a defective scaffold manufactured in Washington. There, the plaintiff chose Washington as the forum of choice given the availability of more favorable damages. As such, the place of injury was mere happenstance in that plaintiff ordered the scaffold from its manufacturer in Washington where the product had been designed and tested and which state set the safety requirements and shipped the product. See *Id*., at 1001-1002. Given these facts, the Washington Supreme Court ruled the trial court should have preserved plaintiff's choice of forum and that the appropriate choice of law was that of Washington – an unlimited wrongful death recovery state – rather than the law of Kansas which limited available recovery. *Id*., at 1002. That is, the court recognized that Washington's unlimited

and (3) *White v. Symetra Assigned Benefits Serv. Co.*, No. 20-1866 MJP, 2022 WL 2983943, at *4 (W.D. Wash. July 28, 2022).

damages was more protective of Kansas residents than was Kansas law, and that Kansas had no interest in applying its limitations on such damages to nonresident defendants being sued in their home state. Practically, then, Washington's unlimited damages would help deter tortious conduct and encourage Washington businesses to make safe products for its customers. *Id*.

By analogy here, the locus of activity that produced the lip balm products issued from California, not Washington. Indeed, as alleged, without Balmuccino's ideation and design, Starbucks would never have developed the products advanced to the public in its Sip Kit promotion. Thus, unlike in *Johnson*, the injury could only fall on California where Balmuccino and its principals were all domiciled and where its lip balm products were devised and initially pitched to Starbucks. By contrast, in *Johnson,* it was purely fortuitous that the product at issue ended up in the hands of a Kansas resident. Accordingly, Starbucks not only misleadingly relies on the *Johnson* case*,* but also on *Restatement* (Second) Conflict of Laws (1971) § 145 cmt e[3] which Starbucks quotes as follows: "when the place of injury can be said to be fortuitous . . . as in the case of fraud and misrepresentation, there may be little reason in logic or persuasiveness to say that one state rather than another is the place of injury." Red Br. at 19. While this may be true when injury

---

[3]Red Br. at 19.

can issue from any or all states where fraud or misrepresentation are perpetrated, here the injury is specific to California in that a California entity, with California principals, with a product created, developed, and marketed from California was significantly impacted, costing the California entity significant revenue and the state tax revenue.

In this regard, Starbucks misapprehends the ruling in the *Johnson* case. As Appellee notes, that case does say a state's interest in limiting wrongful death damages is to protect defendants from excessive financial burdens and to eliminate speculative claims and difficult computation issues. However, Starbucks conveniently ignores the following language: "[A] cause of action for wrongful death without any limitation as to the amount of recoverable damages strengthens the deterrent aspect of the civil sanction." *Id*., at 1002. That is, *Johnson* stands for just the **opposite** of what Starbucks suggests when it concludes, "[h]ere, too, Washington has a legitimate interest in protecting a Washington corporation from speculative (and stale) claims." Red Br. at 19.

Moreover, Starbucks misdirects the Court in saying that "Balmuccino also relies on new 'facts' that were not pleaded in the FAC." Red. Br. at 20. This includes, for example, an allegation that the Sip Kit was 'produced in another unnamed state which Starbucks later tried to monetize in retail outlets in California.' *Id*. In fact, the FAC states that "in 2018, Plaintiff was shockingly

7

notified that Defendant had reached out to one of the suppliers [Balmuccino's chemist] Mr. Spinnato had been working with to inquire about coffee-flavored lip balms." ER-164, ¶ 14. The FAC then states, "Plaintiff was notified that employees within Defendant's Research and Development team were requesting the creation of prototypes for Starbucks-branded lip balm and lip balm cases," and that "Plaintiff was further informed that the specifications received by the potential manufacturer for these prototypes were identical to those Plaintiff had" provided Starbucks during the Meeting with Mr. Gelman. *Id*. These allegations are followed by the uncontested fact that "[i]n approximately April 2019, Starbucks announced the launch of a kit of . . . lipsticks/glosses . . . [in a] promotion [that] reached California where nearly ten percent of Starbucks's retail stores are sited . . .." *Id.*, at 164-165, ¶ 15. Hence, there is nothing new in the Appellant's Opening Brief when it accurately says that Starbucks's research team sought information from Balmuccino supplier in an unnamed state, which Starbucks soon sought to monetize through a promotion that reached California to help drive its retail sales there. *Id*.

Additionally, Appellee disingenuously complains about Balmuccino's statement that Starbucks's distribution occurred in Nevada, Pennsylvania and Tennessee, as well as from Washington. (Red Br. at 20-21). That information

derives from a declaration supplied **by Starbucks** in support of its Motion to Quash Service of Summons.[4]

Finally, in an aside, Starbucks states Washington has a legitimate interest in protecting a Washington corporation from punitive damages awards. However, the Court never reached this issue, given its dismissal of the case on timeliness grounds. If the Ninth Circuit reverses and remands this case for further consideration, the issue of punitive damages clearly poses a conflict of law that the Court will need to address. (Blue Br. at 28, n. 20.)[5] Surely, California has a great deal of interest in ensuring its residents receive punitive damages awards where merited.

### 2. California, not Washington, Had the More Significant Contract-Related Contacts for Any Conflict of Law Analysis

As noted previously, Appellant has many reasons for contending that California has more significant contract-related contacts than Washington was

---

[4] Blue Br. at 24-25.

[5] As Starbucks notes, Washington eschews punitive damages. California does not. Hence, an unequivocal conflict of law exists on this issue, which has not yet been addressed.

covered at length within its Opening Brief, as alleged within its First Amended

Compalint.[6]

In opposition, Starbucks describes the District Court's ruling on the matter.

However, such rulings seem to accept facts not pleaded and begging for discovery.

Specifically, for instance, the Court found that "Washington, not California, has the

more significant relationship to this case: Because the contract concerned the sale

of coffee-flavored lip balms by Starbucks, both the place of performance and the

location of the contract's subject matter relate more to Washington." ER-89.

However, Balmuccino maintains that the Sip Kit was just the conduit for profits

realized in increased sales **in California**, which has an outsized retail presence in

the United States, as Starbucks has acknowledged. Although the Court found that

a large retail presence does not tie the contract issues to California any more than

other states with a significant Starbucks presence (ER-90), this begs the question.

Where Starbucks' sales increased is an open issue (despite the fact Balmuccino has

properly alleged – as already admitted by Starbucks – that more than 10% of its

retail locations are within California). Thus, this issue is appropriately the subject

---

[6] See Appellant's Opening Brief (i.e., "Blue Br."), at pp. 25-26.

of discovery that the Court has precluded on even a rudimentary basis because of its premature termination of the lawsuit.

Further with regard to discovery that should have been allowed to take place is the fact that the proposed First Amended Complaint asserts Starbucks contacted one of Balmuccino's suppliers in an unnamed state to discuss the fabrication of lip balm-related products that were proprietary to Balmuccino. Starbucks does not deny this. Rather, it maintains the manufacturing and marketing of the Sip Kit promotion occurred in Washington and that its promotion was national in scope. In its ruling on whether a conflict of law on the contract-related issues favored California or Washington law, the Court ignores the allegation that Starbucks contacted a third-party supplier of Balmuccino the year before the Sip Kit was launched. Discovery should have taken place on this issue.

Moreover, with respect to the legal analysis, even the case law upon which both the Court and Appellee rely favors Balmuccino's position; the place where damages occur is key to understanding how a conflict of law should be resolved when the place of negotiations and executing contracts are not significant.

In *Canron, Inc. v. Fed. Ins. Co.*, 918 P.2d 937, 939, 944-45 (Wash. Ct. App. 1996), the issue centered on insurance coverage on a claim for environmental clean-up at a Superfund site in Washington. The place of negotiating and entering into the contract were outside of Washington and were not significant contacts.

11

However, what did occur in Washington were the damages at issue. The Court of Appeal noted in applying Washington law that it was the state which had a "paramount interest in the health and safety of its people." *Id*., at 945.[7] Similarly, here, California clearly has a paramount interest in protecting its citizens from trade secret infringement by another state. Damages from the alleged infringement occurred in California, where Balmuccino operated – not in Washington.

Further, Starbucks relies on yet another insurance coverage case to argue that Washington law should apply. In *Tilden-Coil Constructors, Inc. v. Landmark Am. Ins. Co.*, 721 F. Supp. 2d 1007 (W.D. Wash. 2010) ("*Tilden-Coil*"), the court found that as between the law of Washington and California in determining which state should have jurisdiction over a case, what was of import was 'not to count contacts,' but to consider which contacts were of greatest significance to the relevant transaction or occurrence. *Id*., at 1014. Although as in the case at bar, Washington state was the home of one of the parties, defendant insurer was not domiciled in California, so that the place of residence favored Washington over California in the dispute. *Id.,* at 1015. This, of course, is inapplicable here, where

---

[7] As the court in *Canron* noted, the "existence or absence of insurance proceeds [could] determine whether or not a hazardous waste site is remediated." *Id*., at 945.

the Appellant's and Appellee's respective places of domicile were California and Washington.

Moreover, in *Tilden-Coil,* the parties' expectation was that Washington law would apply if there were a conflict of law because the policy at issue was negotiated and purchased in Washington to cover risks that attached to activities that were performed 'almost exclusively' in Washington and in Alaska, not California. *Id.* The court further underscored that "Washington's interest in protecting its insureds also outweigh[ed] California's interest in deterring fraud and collusion," in that there were alternative means to address this issue. *Id*.

By contrast, here, California's policy of protecting its citizens against the misappropriation of intellectual property outweighs any claim Starbucks had in developing a lip balm product in Washington. This is especially so when, as discussed in Balmuccino's Opening Brief, the issue of research and development has not been the subject of discovery beyond Starbucks's self-serving declarations. As such, it is question begging for Starbucks to assert that the "creating, developing, and launching the Sip Kit and then crediting and compensating Balmuccino for it" had to "have been carried out at Starbucks headquarters in Washington." Red Br. [i.e., Appellee's Brief] at 16.

13

**B.** **Issue Preclusion Does Not Support the District Court's Judgment on Either Substantive or Equitable Grounds[8]**

Although the instant appeal is from a decision of the District Court of Washington, Starbucks maintains it, in turn, relied on factual findings made in California state courts which found they lacked personal jurisdiction over Balmuccino's case. In that the primary facts of the case were raised in the state action, Appellee now argues issue preclusion (aka "collateral estoppel") bars Balmuccino from arguing that California had the more significant relationships with the case than did Washington. Starbucks did not raise this issue as an affirmative defense (since it filed no Answer) or in its Motion to Dismiss. Rather, in passing, it first mentions issue preclusion in its Reply to Balmuccino's Opposition to the Motion to Dismiss. ER-111:18-24. Indeed, even though this is a primary focus of Starbucks in the instant appeal, it was raised in little more than an aside before the appeal.

While Starbucks has arguably waived this defense by belatedly addressing it, it misconstrues the law on issue preclusion. Indeed, if the District Court adopted

---

[8] As Starbucks recognizes, '[f]ederal courts must apply the collateral estoppel rules of the state that rendered the underlying judgment.' *Spirit of Aloha Temple v. County of Maui*, 49 F.4th 1180, 1193 (9th Cir. 2022) (citation omitted.) Red Br. at 22, n. 8. Accordingly, this means that California law applies here.

the factual findings of the California courts, this would have been error.  Further,

Starbucks conveniently ignores the equitable grounds upon which Balmuccino

should be permitted to advance its lawsuit.[9]  As case law instructs, issue preclusion

is ineffectual even if the facts arguably support its application, when equitable

considerations augur against summary disposition and would deny a party its day

in court.  Here, while Starbucks is quick to argue issue preclusion, it is strikingly

silent on the fact that " '[e]ven where the technical requirements are all met, the

doctrine is to be applied "only where such application comports with fairness and

sound public policy. " ' " (*Contreras-Velazquez v. Fam. Health Centers of San

Diego, Inc*., 276 Cal. Rptr. 3d 358, 369 (Cal. Ct. App. 2021), as modified on denial

of reh'g (Apr. 7, 2021), review denied (June 30, 2021) (*Contreras-Velazquez*.)[10]

Thus, issue preclusion is not an "inflexible, universally applicable principle," as

---

[9]Equitable tolling was neither raised nor needed in the state action.

[10]A string of cases cite to this proposition, with *Contreras-Velazquez* quoting here from *Union Pac. R.R. Co. v. Santa Fe Pac. Pipelines, Inc.*, 180 Cal. Rptr. 3d 173, 213 (Cal. Ct. App. 2014) (*"Union Pacific"*), which in turn cited this principle from *Direct Shopping* Network, *LLC v. James*, 143 Cal.Rptr.3d 1 (Cal. Ct. App. 2012) ("*Direct Shopping Network*").  *Direct Shopping Network* sounded this same refrain as earlier quoted in *Smith v. ExxonMobil Oil Corp*., 64 Cal. Rptr.3d 69, 73 (Cal. Ct. App. 2007), which, in turn cites to predecessor cases that emphasize that imposing collateral estoppel is not simply a matter of whether an issue has been previously adjudicated.

policy concerns may limit its use. *Union Pacific,* 180 Cal. Rptr. 3d at 214, *infra,*
n. 8. Indeed, when doubt exists about the applicability of issue preclusion, "it
should not apply." *Id.,* cited in *Teton Glob. Invs. LLC v. LC Inv. 2010, LLC*, No.
21-56239, 2022 WL 10385051, at *1 (9th Cir. Oct. 18, 2022). As discussed below,
the principles of equitable tolling should apply here, so as to finally afford
Balmuccino its day in court.

Equitable principles aside, however, the law is guarded about imposing issue
preclusion, and eschews its use unless all the elements of collateral estoppel are
met. Actual litigation, of course, is one of the requisites for issue preclusion, along
with a final adjudication of an identical issue asserted against a litigant "who was a
party in the first suit or in privity with that party." *Tukes v. Richard*, 296 Cal. Rptr.
3d 707, 723 (Cal. Ct. App. 2022). In this regard, the elements of issue preclusion
are "conjunctive." *Id*. Hence, "*if just one [element] is unsatisfied, issue preclusion
cannot apply*." *Id*., emphasis added. "Bare pre-trial dismissal of a lawsuit with
prejudice does not result in the 'actual litigation' of any issues for issue preclusion
purposes." *Id*.

Dispositively, for issue preclusion to apply, there must be a ruling on the
merits by the first court at issue. See, e.g., *Malone v. Equitas Reinsurance Ltd.*, 101
Cal. Rptr.2d 524, 532 (Cal. Ct. App. 2000). Here, that court was California's
superior court, which found it lacked personal jurisdiction over Balmuccino's

lawsuit. The state Court of Appeal then affirmed that ruling. Although those courts referenced facts in the case to assess whether the California courts could adjudicate the matter, this was **not** a ruling on the merits, so that Starbucks wrongly assumes the District Court must adopt the California courts' assessment of the facts. This is punctuated by Starbucks's own concession that its Motion to Quash Service of Summons addressed "jurisdictional issues," but not "the *merits of Plaintiff's claims*". (Emphasis in the original.) ER-13, n. 4. In turn, the trial court itself dismissed the "action for lack of personal jurisdiction, *without prejudice as to the merits*."[11] (Emphasis added.)

Thus, even assuming arguendo, the same facts were in play in both the California and Washington litigation, it is of absolutely no legal consequence for purposes of advancing an argument of issue preclusion where actual litigation is lacking. Importantly, while the state courts were free to challenge the facts underlying the issue of personal jurisdiction, the District Court recognized it had to

---

[11]See footnote 9: Judicial notice is permissible for first time on appeal. (See Fed. R. Evid. 201 (d); and *Dawson*, 451 F.3d at 551 n. 1), even if proceedings are outside the federal judiciary, so long as they directly relate to the matters at issue. *Robinson Rancheria*, 971 F.2d at 248; *Bryant,* 444 F.2d at 357. Balmuccino asks the Ninth Circuit to take judicial notice of the Order Granting Motion to Quash and Dismissing Action for Lack of Personal Jurisdiction of Superior Court Judge Rupert A. Byrdsong, of the California Superior Court for the County of Los Angeles, and which Order issued July 14, 2020, in Case No. 19STCV37444.

'assume[] the truth of the facts alleged in the complaint,' citing *Flaa v. Hollywood Foreign Press Ass'n,* 55 F.4th 680, 685 (9th Cir. 2022) (quoting *Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 24 F.4th 1262, 1266 (9th Cir. 2022). ER-81. Starbucks fails to recognize this in concluding that the integrity of the judicial system has somehow been impugned, or its resources unduly dissipated. (See Red Br. at 24.)

In sum, in their respective reviews of the facts of the case, the tasks of the California courts and the District Court were distinctive. In California, the issue was whether the facts conferred specific jurisdiction over Starbucks, so the court had discretion to assess the parties' respective positions. In Washington, however, jurisdiction was clearly established, so the Court focused on whether a conflict of law existed between California and Washington and, if so, which state's law should apply to the substantive allegations, especially as relates to equitable tolling. Issue preclusion "operates to preclude re-litigation of only those issues that were necessary to support the judgment entered in the first action." *Waltz v. U.S. Dep't of Agric.*, 251 F.R.D. 491, 498 (E.D. Cal. 2008). While the timeliness of Balmuccino's litigation and the substantive merits were before the District Court, those issues were <u>not</u> litigated before the state courts. In sum, the issue of "issue

preclusion" or of "contradicting the California courts' factual findings"[12] is simply a red herring.

## C.    **Filing a Lawsuit in the Wrong Forum Equitably Tolled the Statute of Limitations under California Law**

While Balmuccino acknowledges the requisites for equitable tolling differ under California and Washington law, Appellant maintains that any conflict of law should favor an application of California law.  In particular, California law provides that inadvertently maintaining a lawsuit in the wrong forum supplies a ground for equitable tolling. *HIBU Inc. v. Plotkin Fin., Inc.*, 722 F. App'x 625, 627 (9th Cir. 2018), citing *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1184-86 (9th Cir. 2009) and *Landmark Screens, LLC v. Morgan, Lewis & Brokius, LLP*, 676 F.3d 1354, 1363 (Fed. Cir. 2012) (tolling limitations period when "prior state court suit dismissed" for lack of jurisdiction "and ambiguity as to proper forum").  Indeed, if, as Balmuccino argues, California's equitable tolling law should apply, Starbucks is simply wrong when it baldly states that the Ninth Circuit "must affirm the district court's conclusion that Balmuccino's claims are time-barred." Red Br. at 26.

Further, Balmuccino lacks the clairvoyance that Starbucks impliedly ascribes to it – suggesting, as it does, that Balmuccino should somehow have

---

[12]Red Br. 29.

known that Washington, not California, law would be attached to the case in federal court – especially when Balmuccino genuinely believed California law had the better claim.  As such, Starbucks cannot be heard to complain that Balmuccino both wasted its resources by litigating seriatim in state, and then federal court, and that, alternatively, it was slow to advance the case on two fronts simultaneously, in both state and federal court, which would have triggered an even greater expenditure of resources at the outset of the litigation.  Waiting to file in district court did not cause it to incur additional expenses. Red Br. at 26-27.  Indeed, letting the legal process play out in California before refiling in Washington saved time and resources for both of the parties, because they were not operating on two potentially conflicting fronts at once.

Clearly, it is inconsistent for Starbucks to state a concern with preserving judicial resources (Red Br. at 24), and then to insist Balmuccino should be denied the benefits of equitable tolling under California law because it let the state court adjudication (including the appeal) play out before the case was refiled in Washington's district court. See, e.g., Red Br. at 26-27.  As California law provides, no policy requires a plaintiff to simultaneously file two separate actions predicated on the same facts in both state and federal courts since "duplicative proceedings are surely inefficient, awkward and laborious." *Elkins v. Derby*, 525 P.2d 81, 88 (Cal. 1974).

20

That is, "an awkward duplication of procedures is not necessary to serve the fundamental purpose of the limitations statute, which is to insure timely notice to an adverse party so that [it] can assemble a defense when the facts are still fresh." *Id*., at 83. This was accomplished here with the filing of the state court action. Starbucks was not only on notice of the facts informing the action against it (and which facts remained constant through to the filing of the action in federal court), but it preserves relevant information in the declarations it used to support its Motion to Dismiss in the state court action. Absent prejudice to the defendant, equitable tolling is available when a party with multiple available remedies pursues one in good faith and in a timely manner. *Id.*, at 84. Indeed, even if a remedy proves futile or is later determined to be defective, a plaintiff's good faith pursuit of it may toll the limitations period. *Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 467 P.3d 1033, 1041-1042 (Cal. 2020).

In California, this includes an action dismissed for lack of personal jurisdiction and then refiled elsewhere after the running of the limitations period. *Id*. As noted here, Starbucks was not only on notice of an action against it when the California action was filed, but it began gathering evidence and preparing a defense. Starbucks suffered no undue prejudice from the misfiling of the case initially or its refiling beyond the limitations period, in that the initial filing was timely. This is true **even though the first case was futile for lack of personal**

21

**jurisdiction**. *Addison v. State of California*, 578 P.2d 941, 944 (Cal. 1978)

("*Addison*").

Moreover, Balmuccino did not always control the legal process in

California. This was not only true when the case was on appeal in state court, but

also due to the COVID outbreak. Extensions of time dictated by the pandemic

prolonged the litigation and consumed the resources of both the litigants and the

courts and was beyond their control.[13] Added to California's unequivocal

_____

[13]Illustratively, due to the pandemic, Los Angeles County Superior Court Judge
Rupert A. Byrdsong's Order dated March 18, 2020, in Case No. 19STCV37444
provided: "Based on current conditions, including, but not limited to, the spread of
COVID-19, the need for social distancing, a state of emergency having been
declared . . ., the court finds good cause to make the following orders: ¶ On the
Court's own motion, the Hearing on Motion to Quash Service of Summons [and
Case Management Conference] scheduled for 04/13/2020 are continued to 6/08/20
. . .." Starbucks asks that the Ninth Circuit take judicial notice of this Order.
Judicial notice may be taken at any stage in a case (Fed. R. Evid. 201 (d)),
including for the first time on appeal. See *Dawson v. Mahoney*, 451 F.3d 550, 551
n. 1 (9th Cir.) ("*Dawson*"). As Federal Rule of Evidence rule 201(b)(c) provides,
facts may be judicially noticed if not subject to reasonable dispute since they are
accurately and readily determinable from sources whose accuracy cannot
reasonably be challenged; such notice may be taken by the court on its own. This
includes proceedings in other courts, within or without the federal judicial system
when directly related to the matters at issue. *U.S. ex rel. Robinson Rancheria
Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("*Robinson
Rancheria*"); *Bryant v. Carleson,* 444 F.2d 353, 357 (9th Cir. 1971) (court
judicially noticed proceedings and filings in other courts, including a California
Supreme Court decision issued while parties' appeal pending in federal case), *cert.
denied,* 404 U.S. 967 (1971).

endorsement of equitable tolling where denial of personal jurisdiction in one court delays filing in another court, and given California's concern with judicial and procedural economy which counsels against the filing of the same lawsuit in two courts at once, Balmuccino's claims would clearly have been timely if California's equitable tolling principles had been applied here in the District Court litigation.[14]

**D.** **The District Court Abused its Discretion in Dismissing the FAC Based On the Factual Findings of the California Courts**

As discussed above, to the degree the District Court relied on the facts of prior state court decisions, it errs to the extent it concluded there was issue preclusion as to those facts. That this occurred is suggested by the Court's reliance on facts reported in the California appellate court decision in Westlaw, upon which the Court concluded that the "more significant relationship to Balmuccino's tort claims was in Washington, not California." ER-91. In the Court's Order, it specifically references the following language: "The uncontroverted evidence before us is that the Sip Kit lip glosses, as well as the entire promotional campaign, were created, developed, and launched in Washington, not California." 2022 WL 3643062, at *5. ER-91. As noted above, however, on a motion to amend, the

---

[14]Equitable tolling was, of course, not at issue in the state court filing in California, which was indisputably timely filed.

23

Court must assume the facts in a litigant's Complaint are true – not the facts of a previous court absent issue preclusion. It is important to note that Balmuccino's allegations, which should be accepted as true at the pleadings stage, are contrary to these findings. In that the District Court adopted the findings on the facts of the California courts as its own, the Court erred.

In turn, it begs the question to assert a proposed amendment would be futile or that California law does not apply. This is critical. If, as Balmuccino argues, California law applies, so do its principles of equitable tolling. As discussed above, those principles expressly permit filing an otherwise untimely suit in a different court system, to "soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." (*Addison*, 578 P.2d at 944.) As previously noted, such tolling avoids the needless expenditure of time and resources until one court system has exhausted its review of a case. Moreover, even before the appellate court issued its remittitur, Balmuccino quickly filed in federal court. Meanwhile, Starbucks was not only aware of the principal facts and allegations, but preserved its position in declarations filed in support of

its Motion to Quash in October 2019.[15]  As such, Starbucks disingenuously alleges

that delays in the litigation worked an untoward detriment on it.

## E. The District Court Erred in Failing to Permit Discovery on the Issue of Where Starbucks Acquired the Manufacturing Information that Led to Its Development of Sip Kit Products

Starbucks maintains it would be impossible for Balmuccino to amend its

original complaint without contradicting its prior allegations.[16]  The proposed First

Amended Complaint alleges Starbucks contacted a supplier of Balmuccino in 2018

to elicit proprietary prototype information for lip balm-related products.  However,

this parrots information already in the Complaint at Paragraph 14. ER-164 and ER-

222.  As previously noted, the Court could not have drawn any conclusions about

where the Sip Kit product was conceived or copied without permitting discovery

on this issue.  Absent such information, the District Court could only guess as to

whether Washington or California had the more significant relationships with the

parties to the litigation.  In turn, this unduly weighted the scale of justice in

Starbucks's favor.

---

[15] These Declarations are at ER 24-27 and are attached to Starbucks's Motion to Quash Service of Summons for Lack of Personal Jurisdiction, starting at ER-5.
[16] Red Br. 29.

**F.**     **The District Court Erred in Finding Starbucks was Unduly Prejudiced By any Delay in Filing of Suit in the District Court**

While the Court held Starbucks was prejudiced by Balmuccino's alleged delays, it is unclear how. Starbucks argues that "Balmuccino became aware of the lack of connection between California and the facts giving rise to this case by July 2020, when the California trial court dismissed Balmuccino's initial action for lack of personal jurisdiction." Red Br. 29. However, as Starbucks and the Court knew, Balmuccino did not just sit on its hands. As the District Court recognized, Balmuccino timely appealed the trial court's decision to the California Court of Appeal. ER-83. The Court also recognizes that <u>before</u> the remittitur even issued from the California Court of Appeal, Balmuccino refiled in the District Court. *Id*. The Court further stated that although Balmuccino was a day late in filing a First Amended Complaint, it was not "within the interests of justice to dismiss the matter with prejudice." *Id*. Accordingly, Balmuccino refiled its unopposed First Amended Complaint on March 7, 2023. ER-84.

In reliance on Washington law as to equitable tolling, the Court then declined to offer further leave to amend on legally questionable grounds. This included a finding that Starbucks was prejudiced "based on Balmuccino's undue delays" (ER-84), which alone does not generally support refusal to permit amending a Complaint, absent actual prejudice, or a substantive shift in the focus

of the allegations, as discussed below. Moreover, the District Court relied, in part,

on *Mansfield v. Pfaff*, No. C14-0948JLR, 2014 WL 3810581, at *4 (W.D. Wash.

Aug. 1, 2014), which measures prejudice in part on whether discovery has closed

and the proximity of a trial date. ER 99. Here, the case was still at the pleading

stage, so Starbucks was not foreclosed from propounding discovery; similarly,

there was no pending trial date that implicated its ability to fully defend itself.

Other of the cases the Court relied on to deny amendment are also readily

distinguishable. In *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074,

1079 (9th Cir. 1990), the district court had dismissed the original complaint, and

nearly two years after its filing, plaintiff moved for leave to amend. *Id*., at 1079. It

was in this context that the district court denied the motion, "citing the inordinate

delay, prejudice to the defendants, the fact that the amended complaint would

greatly change the nature of the litigation, and the potential futility of the claims."

*Id*. The Ninth Circuit found that "[t]he delay of nearly two years, while not alone

enough to support denial," was relevant, but more significantly, the new claims "in

the amended complaint would have greatly altered the nature of the litigation and

would have required defendants to have undertaken, at a late hour, an entirely new

course of defense." *Id*. Even this, the Ninth Circuit noted, was not fatal to

amendment, but entered into the calculus, especially since the new allegations were

a "radical shift in direction" and were tenuous in nature. *Id*. Added to the

amendment's delay, the Ninth Circuit found there was no abuse of discretion in the lower court's denying leave to amend. Even then, however, the affirmance of the lower court's ruling was "without prejudice to the court's reconsideration of its ruling should it choose to exercise its discretion anew regarding any of the claims." *Id*.

Similarly, the facts in *Douchette v. Bethel School Dist. No. 403*, 818 P.2d 1362, 1366 (Wash. 1991), are readily distinguishable. There, three years had elapsed since the events at issue had occurred, and the court found no grounds to equitably toll the limitations period under Washington law, given the potential for memories to have faded, witnesses to be unavailable and relevant evidence no longer obtainable. *Id*. By contrast here, Starbucks not only started to gather information when the lawsuit was first filed, but it had the foresight to memorialize key defenses in declarations, including from the Group Marketing Manager for the Sip Kit promotion. Starbucks, of course, tries to rehabilitate the District Court's ruling to bar an amended complaint due to issue preclusion, but as previously discussed, issue preclusion is unavailable here.

## G. <u>The District Court Erred in Not Permitting Balmuccino to Amend Its Complaint</u>

As the District Court acknowledged, in granting a Motion to Dismiss, leave to amend should generally be given. *CyWee Grp Ltd. v. HTC Corp*., 312 F. Supp.

3d 974, 981 (W.D. Wash. 2018); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-1052 (9th Cir. 2003) ("*Eminence*") (leave to amend "freely given when justice so requires" and "with extreme liberality"). ER-98. As the Ninth Circuit counsels, it is the potential for "prejudice to the opposing party that carries the greatest weight." *Eminence*, 316 F.3d at 1052. However, the party opposing amendment must demonstrate such prejudice. *DCD Programs*, *Ltd*. v. *Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987). So, too, dismissal with prejudice and without leave to amend is improper "unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence*, 316 F.3d at 1052.

Here, Balmuccino maintains the Court erred in holding the conflict of law between Washington and California favored Washington. This is especially so because it is unclear where Starbucks derived the formulas that helped it develop the lip gloss products it manufactured within a year of contacting a supplier of Balmuccino about its lip balm formulations. Further, it is uncontested that Balmuccino suffered injury in California where it was domiciled and operated.

As to any harm to Starbucks given the passage of time, the District Court concedes that "**while Balmuccino is correct that Starbucks had timely notice of the suit due to Balmuccino's continuous legal action against Starbucks**, Starbucks *may* still be prejudiced by Balmuccino's delays" and the time that had passed since the alleged events had occurred. (Emphasis added.) ER-99. In fact,

there was no untoward delay as the courts continuously addressed the case in California or Washington, which venues controlled the litigation schedules before, during and after the appeal in California. Finally, the Court fails to acknowledge that Starbucks had, in fact, preserved the position of key personnel through declarations it submitted early on in the litigation to support its Motion to Quash service in California.

In downplaying or ignoring key facts in the case, the Court has denied Balmuccino a full and fair opportunity to litigate its case against Starbucks. For Starbucks, the instant litigation is likely little more than an annoyance. For Balmuccino, it is an exhausting, expensive process to try to realize the full fruits of its conception and design of lip balm products – products with commercial applications that Starbucks elicited from it without due compensation.

### III.      CONCLUSION

For all of the foregoing reasons, Balmuccino respectfully requests that the District Court's Order to Dismiss the First Amended Complaint be vacated, and that California law be deemed to govern the case as to any conflict of law, including on the issues of equitable estoppel and punitive damages.

Date: January 10, 2024              Martorell Law APC

                                                 s/ Eduardo Martorell
                                                 _____
                                                 EDUARDO MARTORELL
                                                 JOANN VICTOR
                                                 *Attorneys for Appellant Balmuccino, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** No. 23-35561_____

I am the attorney or self-represented party.

**This brief contains 6,884 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Eduardo Martorell_____ **Date** January 10, 2024_____

*(use "s/[typed name]" to sign electronically filed documents)*

31